**BACKENROTH, FRANKEL & KRINSKY, LLP**
489 5th Avenue
New York, New York 10017
(212) 593-1100
Counsel to the Debtors


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel Owners, LLC, | Case No. 11-12334 |
| Debtor. | |

----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel, LLC, | Case No. 11-12560 |
| Debtor. | |

----------------------------------------------------------x

## JOINT DISCLOSURE STATEMENT

      **THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF MADISON HOTEL, LLC AND MADISON HOTEL OWNERS, LLC ("DEBTORS"). THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE DEBTORS' PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT. ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION ANNEXED TO THE DISCLOSURE STATEMENT AS EXHIBIT A.**

      **THESE CASES HAVE NOT BEEN SUBSTANTIVELY CONSOLIDATED AND THE PLAN IS COMPRISED OF TWO PLANS; I.E, SEPARATE PLANS FOR EACH DEBTOR. THE PLAN DOES, HOWEVER, PROVIDE FOR THE MERGER OF THE DEBTORS ON THE EFFECTIVE DATE. CONFIRMATION OF EACH PLAN IS CONTINGENT UPON CONFIRMATION OF BOTH PLANS.**

      **COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

## **INTRODUCTION**

1. Madison Hotel, LLC ("Hotel") and Madison Hotel Owners, LLC ("Owners," collectively with Hotel, the "Debtors") submit this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of their Joint Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit "A." All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2. This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the Plan. To the extent a Creditor has any questions, the Debtors urge you to contact the Debtors' counsel and every effort will be made to assist you.

3. THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE PLAN. THE DEBTORS' GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN. IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTORS MAY SEEK TO CONFIRM THE PLAN OVER THE REJECTION OF ANY CLASS UNDER SECTION

1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT

CONFIRMATION OF THE PLAN.

4.      On _____, 2011, after notice and a hearing, the

Bankruptcy Court entered an order approving this Disclosure Statement as containing

information of a kind and in sufficient detail in light of the nature and history of the Debtors and

the condition of the Debtors' books and records, to enable Creditors whose votes are being

solicited to make an informed judgment whether to accept or reject the Plan.

5.      Creditors should read this Disclosure Statement in its entirety prior to

voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure

Statement.

6.      THE INFORMATION CONTAINED IN THIS DISCLOSURE

STATEMENT HAS BEEN SUPPLIED BY THE DEBTORS.  THE DEBTORS' BOOKS AND

RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE

DEBTORS' FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE

STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTORS'

COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION

DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTORS NOR DEBTORS'

COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO

INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE

INFORMATION CONTAINED HEREIN INACCURATE.


7.      After reviewing this Disclosure Statement, indicate your vote to accept or

to reject the Plan on the enclosed ballot, and return the ballot to: Backenroth Frankel & Krinsky,

LLP, 489 Fifth Avenue, New York, New York 10017, on or before

_____, 2011.  LATE BALLOTS WILL NOT BE COUNTED.


8.      The Bankruptcy Court has entered an Order fixing

_____, 2011, at _____ a.m., at the United States Bankruptcy Court,

One Bowling Green, New York, New York as the date, time and place for the hearing on

confirmation of the Plan and fixing _____, 2011, as the last date for the

filing of any objections to confirmation of the Plan.


## GENERAL INFORMATION REGARDING THE DEBTORS


9.      On May 16, 2011 Madison Hotel Owners, LLC filed its Chapter 11

petition, and on May 26, 2011, Madison Hotel LLC filed its Chapter 11 petition.


10.     Madison Hotel, LLC owns the real property located at 62 Madison

Avenue, New York, New York (the "Property").   The Property is a 72 room 12 story hotel.

Madison Hotel Owners LLC owns 100% of the membership interests of Madison Hotel, LLC.

11.     The Debtors estimate that the value of the Property is approximately $32,000,000.  An appraisal is pending.

12.     The Property is encumbered by a lien presently held by 62 Madison Lender, LLC (the "Lender"), which the Lender asserts is in the amount of approximately $21,641,779 (the "Building Loan") as of the Petition Date.  In addition, Madison Hotel Owners, LLC's membership interest in Madison Hotel LLC is encumbered by a lien in the amount of approximately $5,000,000 (the "Mezzanine Loan") held by an affiliate of the Lender.

13.     The Debtor's general unsecured claims total approximately $1,113,689 plus a disputed general unsecured claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

14.     The Debtors' financial problems arise from the economic downturn which caused the Property's income to drop, which in turn, impaired the hotel's cash flow.  The Building Loan was initially entered into within days of the Lehman Brother bankruptcy, and shortly thereafter the Lender's predecessor in interest applied enormous pressure to obtain the Debtors' consent to an increase in the interest rate from 7.5% to 12%, which further squeezed cash flow. The Building Loan went into arrears, a foreclosure action was commenced, and a receiver appointed.

15.     At this point in their Chapter 11 cases, the Debtors have not objected to the receiver's continued operation of the Property.  The receiver continues to operate and the Debtors have consented to the payment of post-petition debt service to the lenders at the non-default contract rate.

16.     The Plan proposes to pay the Building Loan over time on terms that would be the indubitable equivalent of a market based note and mortgage.  As to the Mezzanine Loan, the Debtors' intention is to simply pay the amount due in full under the Plan.  These cases have not been substantively consolidated and the Plan is comprised of two plans; i.e, separate plans for each Debtor.  Confirmation of each plan contingent upon confirmation of both Plans.

### THE DEBTORS' PLAN OF REORGANIZATION
### CLASSIFICATION AND TREATMENT OF CLAIMS

### Owners Class 1: Nomad Mezz Lending, LLC Secured Claim

17.     **Classification** –  Claim held by Nomad Mezz Lending LLC secured by the Debtor's membership interest in Hotel.  Such Claim totals approximately $5,000,000.

18.     **Treatment** – Payment in full in Cash on the Effective Date with interest at the contract rate.

19.     **Voting** – Unimpaired and deemed to have accepted the Plan.

**Owner Class 2: Priority Claims**

20. **Classification** – Allowed Priority Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.  The Debtor is aware of no such Claims.

21. **Treatment** – Payment in full in cash on the Effective Date with interest at the statutory rate.

22. **Voting** – Unimpaired and deemed to have accepted the Plan.

**Owner Class 3: General Unsecured Claims**

23. **Classification** – Allowed Unsecured Claims.  Such Claims total approximately $1,113,689 plus a disputed claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

24. **Treatment** – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the New York judgment rate from the Petition Date through the final payment.

25.     **Voting** – Impaired and entitled to vote accept or reject the Plan.


**Owner Class 4: Convenience Class**


26.     **Classification** – Unsecured Claims totaling less than $1,500.


27.     **Treatment** – Payment in full in cash plus interest at the New York judgment rate on the Effective Date.


28.     **Voting** – Unimpaired and deemed to have accepted the Plan.


**Owner Class 5: Equity Interests**


29.     **Classification** – Interest Holders.


30.     **Treatment** -- Entitled to maintain ownership of approximately 50% of their Interests pursuant to the agreement with CRP Holding SPA to fund the Plan.  On the Effective Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.


31.     **Voting** – Impaired and entitled to vote accept or reject the Plan.

**Hotel Class 1: New York City Lien Charges**

32.    **Classification** – Real estate tax, water, sewer and other lien charges held by the City of New York which constitute first liens on the Property.  The Debtor estimates that no such Claims are due.

33.    **Treatment** – Payment in full in cash with interest at the statutory rate.

34.    **Voting** – Unimpaired and deemed to have accepted the Plan.

**Hotel Class 2: 62 Madison Lender, LLC**

35.    **Classification** – First mortgage on the Property.  The Claimant estimates that the Class 2 Claim totals $21,641,779 as of the Petition Date.

36.    **Treatment** – Monthly interest payments on the Allowed Amount of the Claim at an annual interest rate of 5.5% for 60 months, plus monthly amortization payments based upon a 30 year amortization schedule.  Outstanding principal amount due at maturity, subject to a 60 sixty month renewal at then prevailing market rates.  Documentation shall be pursuant to standard recordable forms.

37.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Hotel Class 3: Priority Claims**

38.     **Classification** – Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.  The Debtor is aware of no such Claims.

39.     **Treatment** – Payment in full in cash plus interest at the Statutory Rate on the Effective Date.

40.     **Voting** – Unimpaired and deemed to have accepted the Plan.

**Hotel Class 4: General Unsecured Creditors**

41.     **Classification** – Allowed Unsecured Claims.  Such Claims  total approximately $1,113,689 plus a disputed general unsecured claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

42.     **Treatment** – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the New York judgment rate from the Petition Date through the final payment.

43.    **Voting** – Impaired and entitled to vote accept or reject the Plan.


### Hotel Class 5: Convenience Class


44.    **Classification** – Unsecured Claims totaling less than $1,500.


45.    **Treatment** – Payment in full in cash plus interest at the New York judgment rate on the Effective Date.


46.    **Voting** – Unimpaired and deemed to have accepted the Plan.


### Hotel Class 6: Equity Interests


47.    **Classification** – Class 6 consists of Owner, Hotel's Interest Holder.


48.    **Treatment** -- Entitled to maintain ownership of approximately 50% of their Interests pursuant to the agreement with CRP Holding SPA to fund the Plan. On the Effective Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.


49.    **Voting** – Impaired and entitled to vote accept or reject the Plan.

# ADMINISTRATIVE EXPENSES AND U.S. TRUSTEE FEES

50.     Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be Paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.

51.     Backenroth Frankel & Krinsky LLP, as counsel for the Debtors, received a $50,000 retainer from Owners and a $25,000 retainer from Hotel.  Backenroth Frankel & Krinsky, LLP anticipates that total fees for these cases will exceed that amount in the event that confirmation of the Plan necessitates extensive litigation.

52.     United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtors.

## MEANS FOR IMPLEMENTATION OF THE PLAN

53.     On the Effective Date, Madison Hotel LLC shall be merged into Madison

Hotel Owners, LLC.  The Debtors intend to fund the Plan through cash on hand held by the

receiver of the Property, operating revenue generated by the operations of Hotel and by additional

amounts to be advanced by CRP Holding SPA.  Monthly operating projections for Hotel are set

forth on Exhibit C to the Disclosure Statement.  CRP Holding SPA's written commitment to

fund the Plan and evidence of its financial ability and its parent company, Conte International

Group, to do so is annexed as Exhibit D to the Disclosure Statement.


54.     Confirmation of each Plan shall be contingent upon confirmation of both

Plans.  The Debtors shall be the disbursing agent under the Plan.  The Debtors shall also be the

responsible party for filing post-confirmation reports.


55.     As of the Effective Date, in consideration for the value provided to

effectuate the plan, to the fullest extent permissible under law, the Holders of Claims

release and forever waive and discharge as against the Debtors, each of their respective affiliates,

parent companies and subsidiaries, members, partners, successors, heirs, assigns, representatives

and their managing members solely in their capacity as managing members, including without

limitation BenZion Suky and Joseph BenMoha ,all actions, costs, claims, causes of action,

damages, demands debts, expenses (including attorneys fees), judgments, losses (including any

claims for contribution or indemnification), liabilities, obligations, rights or suits, whether

matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter

arising, in law, equity or otherwise that are based in whole or part on any act, omission,

transaction, event or other occurrence taking place on or prior to the Effective Date

relating in any way to the Debtors or the Chapter 11 Cases; provided, that the foregoing shall not

constitute a waiver or release of any right of the Holder of an Allowed Claim or any

of the rights of any parties in respect of liabilities assumed by the Reorganized Debtors under this

Plan, the releases set forth in this paragraph shall be binding upon and shall inure to the benefit

of the Reorganized Debtors.


## UNEXPIRED LEASES AND EXECUTORY CONTRACTS


56.     All unexpired leases and executory contracts not rejected prior to the

Effective Date shall be assumed under the Plan.  The Debtors are unaware of any executory

contracts or leases.


## FINANCIAL INFORMATION AND LIQUIDATION ANALYSIS


57.     Annexed hereto as Exhibit B are the Debtors' balance sheets and

liquidation analyses.


58.     The Debtors assume that in a liquidation, the Debtors' assets would

exceed their liabilities, but that depending upon the amount of Allowed general unsecured

claims, after payment Chapter 7 liquidation expenses, general unsecured creditors may not be paid in full, as proposed under the Plan.

## PREFERENCE AND FRAUDULENT CONVEYANCE ANALYSIS

59.     The right to pursue preference, fraudulent conveyances or other types of claims under 11 U S.C. §544(b), 547, 548, 549, and 550 or applicable state law will survive the Plan, and the Debtors shall have the exclusive right to prosecute such claims.

60.     The Debtors believe that there are no such claims.

## OBJECTIONS TO CLAIMS

61.     The Debtors reserve their rights to file objections to Claims in the event grounds exist to object to particular Claims.  Such objections will be filed no later than 120 days after the Effective Date.  In the event that objections to claims are filed, the amount of distributions that may have to be made on such claims shall be segregated by the Debtors until the resolution of such objections.

## MANAGEMENT OF THE DEBTORS

62.     The Debtors are managed currently by Benzion Suky and Joseph BenMoha, and management will remain unchanged under the Plan.

## TAX CONSEQUENCES

63.     The Debtors do not believe that there will be any negative tax consequences to the Debtors or to Creditors under the Plan.  Plan payments may constitute taxable income.

64.     THE DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

# **VOTING**

65.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each Creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2011, at the following address:

Backenroth Frankel & Krinsky, LLP
489 Fifth Avenue
New York, New York 10017

66.     Each Creditor of the Debtors whose Claim is impaired[1] under the plan is entitled to vote, if either (I) its Claim has been scheduled by the Debtors, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filing.  Simply stated, a Creditor is impaired if it is being paid less than it is owed.

---

[1]     **Definition of Impairment**.  Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan unless, With respect to each claim or equity interests of such class, the plan:

      **a.**     leaves unaltered the legal equitable, and contractual rights of the holder of such claim or interest; or

      **b.**     notwithstanding any contractual provision or applicable law that entities the holder of a claim or interest to receive accelerated payment of his claim or interest after the occurrence of a default:

(A)     cures any default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

(B)     reinstates the maturity of such claim or interest as it existed before the default;

(C)     compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(D)     does not otherwise alter the legal equitable, or contractual rights to which such claim or equity interest entities the holder of such claim or interest.

67.     Owner Classes 1 and 3 and Hotel Classes 2 and 4 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.

68.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

69.     A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

70.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds in amount and a majority in number of the Creditors actually voting cast their ballots in favor of acceptance.

71.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

72.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

73.     By order of the Bankruptcy Court dated _____, 2011, the Confirmation Hearing has been scheduled for _____, 2011, in Judge Glenn's Courtroom, United States Bankruptcy Court, One Bowling Green, New York, New York 10004.    The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____, 2011:

Backenroth Frankel & Krinsky, LLP
489 Fifth Avenue
New York, New York 100 17
Mark A. Frankel, Esq.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

74.     At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:

a.     The Plan Complies with the applicable provisions of the Bankruptcy Code;

b.     The Debtors have complied with the applicable provisions of the Bankruptcy Code;

c.     The Plan has been proposed in good faith and not by any means forbidden by law;

d.     Any Payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

e.     The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtors have disclosed the identity of any insider that will be employed or retained by the reorganized Debtors, and the nature of any compensation for such insider;

f.     With respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, in an amount that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code;

g.     Each class of Claims or interests has either accepted the Plan or is not impaired under the Plan;

h. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date;

i. At least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class; and

j. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successors to the Debtors under the Plan unless such liquidation or reorganization is proposed in the Plan.

75. The Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

76. The Debtors contend that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

## CONFIRMATION OVER THE OBJECTION OF AN IMPAIRED CLASS

77. In the event that any impaired class of Claim does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired

class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." The Debtors may invoke the provisions of section 1129(b) to any impaired class that does not accept the Plan.

78.     A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

79.     With respect to a Secured Claim, "fair and equitable" means either:

(a)     the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred Cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens;

(b)     property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or

(c)     the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

80.     With respect to an Unsecured Claim, "fair and equitable" means either:

(a)     each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(b)     the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

81.     In the event one or more classes of impaired Claims rejects the plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## CONCLUSION

The Debtors urge the Debtors' Creditors to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than _____, 2011.

Dated: New York, New York
October 19, 2011

**Madison Hotel Owners, LLC**

By:  s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager
-and-
By:  s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager

**Madison Hotel, LLC**

By: s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member
-and-
By: s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member

**BACKENROTH FRANKEL & KRINSKY, LLP**
Attorneys for the Debtors

By:_____s/Mark Frankel_____
489 Fifth Avenue
New York, New York 10017
(212) 593-1100

**EXHIBIT A**

**BACKENROTH, FRANKEL & KRINSKY, LLP**
489 5th Avenue
New York, New York 10017
(212) 593-1100
Counsel to the Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel Owners, LLC, | Case No. 11-12334 |
| Debtor. | |

------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel, LLC, | Case No. 11-12560 |
| Debtor. | |

------------------------------------------------------------x

## JOINT PLAN OF REORGANIZATION

**These cases have not been substantively consolidated and the Plan is comprised of two plans; i.e, separate plans for each Debtor. The Plan does, however, provide for the merger of the Debtors on the Effective Date. Confirmation of each plan is contingent upon confirmation of both Plans.**

## INTRODUCTION

Madison Hotel, LLC ("Hotel") and Madison Hotel Owners, LLC ("Owners," collectively with Hotel, the "Debtors"), propose this Plan of Reorganization for each of the Debtors. **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH OF THE DEBTORS, EACH OF THE DEBTORS' CREDITORS, AND THE INTEREST HOLDERS (AS ALL SUCH TERMS ARE DEFINED BELOW)**.

## ARTICLE 1

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1     **"Administrative Expense"** Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtors' Estate under Chapter 123, Title 28, United States Code.

1.2     **"Administrative Expense Claim"**  A claim for payment of an Administrative Expense.

1.3     **"Allowance Date"** shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.


1.4     **"Allowed Claim"** shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtors' schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.


1.5     **"Allowed Secured Claim"** shall mean an Allowed Claim for which a Claimant asserts and is determined by a Final Order to hold a valid, perfected and enforceable Lien, security interest or other interest or encumbrance in property in which the Debtors have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code and such Claim is allowed by Final Order, but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtors' interest in the property or to the extent of the amount subject to such setoff, as the case may be.


1.6     **"Allowed Unsecured Claim"** shall mean an Unsecured Claim to the extent same is allowed.

1.7      **"Bankruptcy Case"** shall mean these Chapter 11 bankruptcy cases of the Debtors.

1.8      **"Bankruptcy Code"** shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.), as in effect on the Petition Date and as amended during the Bankruptcy Case.

1.9      **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of New York.

1.10      **"Cash"** shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.11      **"Claim"** shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

1.12      **"Claimant"** shall mean the holder of a Claim.

1.13      **"Confirmation Date"** shall mean the date of the entry of the Confirmation Order.

1.14      **"Confirmation Hearing"** shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.15    **"Confirmation Order"** shall mean the order of the Court confirming the Plan.

1.16    **"Court"** shall mean the United States Bankruptcy Court for the Southern District of New York.

1.17    **"Creditor"** shall mean any entity that holds a claim against a Debtor.

1.18    **"Debtors"** shall mean Madison Hotel, LLC and Madison Hotel Owners, LLC.

1.19    **"Disputed Claim"** shall mean the whole or any portion of any claim against a Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.20    **"Effective Date"** shall mean 10 days after the Confirmation Order is a Final Order, or such earlier date or later date as may be practical, but in no event later than 45 days after the Confirmation Order is a Final Order.

1.21    **"Estate"** shall mean the estate of a Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.22    **"Executory Contracts"** shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.23    **<u>"Final Order"</u>** shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.24    **<u>"Hotel"</u>** shall mean Madison Hotel, LLC.

1.25    **<u>"Interest"</u>** shall mean an existing ownership interest in a Debtor.

1.26    **<u>"Interest Holder"</u>** shall mean a holder and owner of an existing Interest in a Debtor.

1.27    **<u>"Legal Rate</u>"** shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

1.28    **<u>"Lien"</u>** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.29    **<u>"Owner"</u>** shall mean Madison Hotel Owners, LLC.

1.30    **<u>"Petition Date"</u>** shall mean May 16, 2011 in the case of Owner and May 26, 2011 in the case of Hotel.

1.31     **"Plan"** shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.32     **"Property"** shall mean the real property located at 62 Madison Avenue, New York, New York.

1.33     **"Secured Claim"** shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

1.34     **"Secured Creditor"** shall mean the owner or holder of a Secured Claim.

1.35     **"Unsecured Claim"** shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of a Debtor or a Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim  includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.36     **"Unsecured Creditor"** shall mean the owner or holder of an Unsecured Claim.

**ARTICLE 2**

**CLASSIFICATION AND TREATMENT OF CLAIMS**

**Owners Class 1: Nomad Mezz Lending, LLC Secured Claim**

2.1     **Classification** – Claim held by Nomad Mezz Lending LLC secured by the Debtor's membership interest in Hotel.

2.2     **Treatment** – Payment in full in Cash on the Effective Date with interest at the contract rate.

2.3     **Voting** –   Unimpaired and deemed to have accepted the Plan.

**Owner Class 2: Priority Claims**

2.4     **Classification** –   Allowed Priority Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.

2.5     **Treatment** – Payment in full in cash on the Effective Date with interest at the statutory rate.

2.6     **Voting** –   Unimpaired and deemed to have accepted the Plan.

**Owner Class 3: General Unsecured Claims**

2.7     **Classification** – Allowed Unsecured Claims.

2.8     **Treatment**  – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the New York judgment rate from the Petition Date through the final payment.

2.9     **Voting** –  Impaired and entitled to vote accept or reject the Plan.

**Owner Class 4: Convenience Class**

2.10     **Classification** – . Unsecured Claims totaling less than $1,500.

2.11     **Treatment**  – Payment in full in cash plus interest at the New York judgment rate on the Effective Date.

2.12     **Treatment**  –  Unimpaired and deemed to have accepted the Plan.

**Owner Class 5: Equity Interests**

2.13    **Classification** – Interest Holders.

2.14    **Treatment** – Entitled to maintain ownership of approximately 50% of their Interests pursuant to the agreement with CRP Holding SPA to fund the Plan. On the Effective Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.

2.15    **Voting** – Impaired and entitled to vote accept or reject the Plan.

## Hotel Class 1: New York City Lien Charges

2.16    **Classification** – Real estate tax, water, sewer and other lien charges held by the City of New York which is constitute first liens on the Property.

2.17    **Treatment** – Payment in full in cash with interest at the statutory rate.

2.18    **Voting** – Unimpaired and deemed to have accepted the Plan.

## Hotel Class 2: 62 Madison Lender, LLC

2.19    **Classification** – First mortgage on the Property.

2.20    **Treatment** – Monthly interest payments on the Allowed Amount of the Claim at an annual interest rate of 5.5% for 60 months, plus monthly amortization payments based upon a 30 year amortization schedule.  Outstanding principal amount due at maturity, subject to a 60 sixty month renewal at then prevailing market rates.  Documentation shall be pursuant to standard recordable forms.

2.21    **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

## Hotel Class 3: Priority Claims

2.22    **Classification** – Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.

2.23    **Treatment**  – Payment in full in cash plus interest at the Statutory Rate on the Effective Date.

2.24    **Voting** –  Unimpaired and deemed to have accepted the Plan.

## Hotel Class 4: General Unsecured Creditors

2.25    **Classification**  – Allowed Unsecured Claims.

2.26      **Treatment** – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the New York judgment rate from the Petition Date through the final payment.

2.27      **Voting** – Impaired and entitled to vote accept or reject the Plan.

### Hotel Class 5: Convenience Class

2.28      **Classification** – Unsecured Claims totaling less than $1,500.

2.29      **Treatment** -- Payment in full in cash plus interest at the New York judgment rate on the Effective Date.

2.30      **Voting** – Unimpaired and deemed to have accepted the Plan..

### Hotel Class 6: Equity Interests

2.31      **Classification** – Class 6 consists of Owner, Hotel's Interest Holder.

2.32    **Treatment** --  Entitled to maintain ownership of approximately 50% of their

Interests pursuant to the agreement with CRP Holding SPA to fund the Plan.  On the Effective

Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.


2.33    **Voting** – Impaired and entitled to vote accept or reject the Plan.


# ARTICLE 3

## ADMINISTRATIVE EXPENSES


3.1    Allowed Administrative Expenses shall be paid in full in Cash on the Effective

Date, or the date such Administrative Expense becomes Allowed, except to the extent that the

holder of an Allowed Administrative Expense agrees to a different treatment; provided however,

that Allowed Administrative Expenses representing obligations incurred in the ordinary course of

business or assumed by the Debtors shall be Paid in full or performed by the Debtors in the

ordinary course of business or pursuant to the terms and conditions of the particular transaction.

United States Trustee fees will be paid, and operating reports will be filed as they come due by

the Debtors and any then outstanding U.S. Trustee fees shall be paid in full in Cash on the

Effective Date.

## ARTICLE 4

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     On the Effective Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.  The Debtors intend to fund the Plan through cash on hand held by the receiver of the Property, operating revenue generated by the operations of Hotel and by additional amounts to be advanced by CRP Holding SPA.  The Debtors shall be the disbursing agent under the Plan. The Debtors shall also be the responsible party for filing post-confirmation reports.

## ARTICLE 5

**5**

## PROVISIONS FOR THE RETENTION, ENFORCEMENT AND SETTLEMENT OF CLAIMS BELONGING TO THE DEBTOR OR THE DEBTORS' ESTATE

5.1     All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code are preserved as of the Effective Date.

# ARTICLE 6

**6**

## PROVISIONS FOR THE RESOLUTION OF DISPUTED
 CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

6.1 **Objections to Claims**.  The Debtors may object to and contest the allowance of any Claims for a period of 60 days after the Effective Date.

# ARTICLE 7

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 **Assumption**. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan.

7.2 **Claims Upon Rejection**.  In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim.

7.3  **Failure to File**.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

# ARTICLE 8

# RETENTION OF JURISDICTION

8.1  **Retention of Jurisdiction**.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtors' Bankruptcy Cases including, but not limited to, proceedings:

8.1.1  To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

8.1.2  To hear and determine all Claims, controversies, suits and disputes against the Debtors to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

8.1.3  To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtors or the Debtors' estate, including, but not limited to, any right of the Debtors or the Debtors' Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

8.1.4    To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

8.1.5    To value assets of the Estate.

8.1.6    To enforce the Confirmation Order, the final decree, and all injunctions therein;

8.1.7    To enter an order concluding and terminating the Bankruptcy Case;

8.1.8    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

8.1.9    To determine all questions and disputes regarding title to the assets of the Debtors.

8.1.10   To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

# ARTICLE 9

## GENERAL PROVISIONS

9.1     **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

9.2     **No Payment of Disputed Claims**.  This Plan contemplates the payment of Allowed Claims only.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim, or any part thereof, becomes an Allowed Claim, if ever.

9.3     **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

9.4     **Other Actions**.  Nothing contained herein shall prevent the Debtors, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

# ARTICLE 10

## MODIFICATIONS

10.1     **Modification of Plan.**  The Debtors may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

# ARTICLE 11

## INJUNCTION, DISCHARGE AND PROPERTY OF THE ESTATE

11.1     **Discharge**.  The confirmation of this Plan shall discharge the Debtors from any Claim that accrued or arose on or before the Confirmation Date pursuant to 11 U.S.C. §1141(d)(1).

11.2     **Third Party Releases**.   As of the Effective Date, in consideration for the value provided to effectuate the plan, to the fullest extent permissible under law, the Holders of Claims release and forever waive and discharge as against the Debtors, each of their respective affiliates, parent companies and subsidiaries, members, partners, successors, heirs, assigns, representatives and their managing members solely in their capacity as managing members, including without limitation BenZion Suky and Joseph BenMoha ,all actions, costs, claims, causes of action,

damages, demands debts, expenses (including attorneys fees), judgments, losses (including any

claims for contribution or indemnification), liabilities, obligations, rights or suits, whether

matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter

arising, in law, equity or otherwise that are based in whole or part on any act, omission,

transaction, event or other occurrence taking place on or prior to the Effective Date

relating in any way to the Debtors or the Chapter 11 Cases; provided, that the foregoing shall not

constitute a waiver or release of any right of the Holder of an Allowed Claim or any

of the rights of any parties in respect of liabilities assumed by the Reorganized Debtors under this

Plan, the releases set forth in this paragraph shall be binding upon and shall inure to the benefit

of the Reorganized Debtors.

11.3 **Injunction**.  The confirmation of this Plan shall constitute an injunction of the

Court against the commencement or continuation of any action, the employment of process, or

any act, to collect, recover or offset from the Debtors or their respective property or properties,

any obligation or debt except pursuant to the terms of the Plan.

11.4 **Vesting of Property**.  Except as otherwise provided in the Plan, on the Effective

Date title to all of the Debtors' assets shall pass to the Debtors or their designee free and clear of

all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

# ARTICLE 12

## CLOSING THE CASE

     12.1    Upon substantial consummation, the Debtors may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
       October 19, 2011

                      **Madison Hotel Owners, LLC**

                      By:  s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager
                                -and-
                      By:  s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager

                      **Madison Hotel, LLC**

                      By: s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member
                                -and-
                      By: s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member

                      **BACKENROTH FRANKEL & KRINSKY, LLP**
                      Attorneys for the Debtors

                      By:_____s/Mark Frankel_____
                            489 Fifth Avenue
                            New York, New York 10017
                            (212) 593-1100

**Exhibit B**

## OWNER ASSETS AND LIABILITIES

Assets
Personal property ............................................................................... $7,000,000

Liabilities
Nomad Mezz Lending Claim............................................................ $5,000,000
General Unsecured Claims................................................................ $5,234,950
Total                                                                                        $10,234,950

## OWNER CHAPTER 7 LIQUIDATION ANALYSIS

Assets
Personal Property............................................................................ $7,000,000

Liabilities
Nomad Mezz Lending Claim............................................................ $5,000,000
Administration Claims...................................................................... $   700,000
General Unsecured Claims................................................................ $1,300,000
Total                                                                                         $7,000,000

Note: Claims subject to objection, and joint and several liability exists on General Unsecured Claims

## HOTEL ASSETS AND LIABILITIES

Assets
| | |
|---|---|
| Real Property ............................................................................ | $32,000,000 |
| Cash on Hand (estimated)........................................................... | 1,613,117 |
| Total........................................................................................... | $33,613,117 |

Liabilities
| | |
|---|---|
| Real Estate Tax Lien.................................................................. | $ -0- |
| 62 Madison Lender LLC First Mortgage ..................................... | $21,641,779 |
| General Unsecured Claims........................................................... | $ 5,234,950 |
| Total | $26,876,729 |

## HOTEL CHAPTER 7 LIQUIDATION ANALYSIS

Assets
| | |
|---|---|
| Real Property ............................................................................ | $32,000,000 |
| Cash on Hand (estimated)........................................................... | 1,613,117 |
| Total........................................................................................... | $33,613,117 |

Liabilities
| | |
|---|---|
| Real Estate Tax Lien.................................................................. | $ -0- |
| 62 Madison Lender LLC First Mortgage ..................................... | $21,641,779 |
| Administration Claims................................................................. | $ 3,200,000 |
| General Unsecured Claims........................................................... | $ 5,234,950 |
| Total | $30,076,729 |

Note: Claims subject to objection, and joint and several liability exists on General Unsecured Claims

**Exhibit C**

# The Mave Hotel
## New York, NY

| | 2012 | % | 2013 | | 2014 | % | 2015 | % | 2016 | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Available Rooms | 26,280 | | 26,280 | | 26,352 | | 26,280 | | 26,280 | | 131,472 | |
| Occupied Rooms | 22,312 | | 22,601 | | 22,663 | | 22,601 | | 22,601 | | 112,777 | |
| Occupancy | 84.9% | | 86.0% | | 86.0% | | 86.0% | | 86.0% | | 85.8% | |
| Average Rate | $235.08 | | $244.48 | | $254.26 | | $264.43 | | $275.01 | | $254.70 | |
| Revenue per Available Room | $199.58 | | $210.26 | | $218.67 | | $227.41 | | $236.51 | | $218.49 | |
| | | | | | | | | | | | | |
| REVENUES | | | | | | | | | | | | |
| Rooms | 5,245,039 | 96.0% | 5,525,516 | 96.2% | 5,762,280 | 96.3% | 5,976,398 | 96.4% | 6,215,454 | 96.5% | 28,724,687 | 96.3% |
| Food | | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Beverage | | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Total Food & Beverage | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Telephone | 16,729 | 0.3% | 16,936 | 0.3% | 17,444 | 0.3% | 17,967 | 0.3% | 18,506 | 0.3% | 87,583 | 0.3% |
| Potential Restaurant Rental | 200,000 | 3.7% | 202,000 | 3.5% | 204,020 | 3.4% | 206,060 | 3.3% | 208,121 | 3.2% | 1,020,201 | 3.4% |
| Antenna | 92,000 | 1.7% | 92,000 | 1.6% | 92,000 | 1.5% | 92,000 | 1.5% | 92,000 | 1.4% | 460,000 | 1.5% |
| Total Revenues | 5,461,768 | 100.0% | 5,744,452 | 100.0% | 5,983,745 | 100.0% | 6,200,426 | 100.0% | 6,442,081 | 100.0% | 29,832,471 | 100.0% |
| | | | | | | | | | | | | |
| DEPARTMENTAL PROFITS | | | | | | | | | | | | |
| Rooms | 3,496,690 | 66.7% | 4,116,509 | 74.5% | 4,321,710 | 75.0% | 4,482,299 | 75.0% | 4,661,590 | 75.0% | 21,078,799 | 73.4% |
| Food | 0 | 5.0% | 0 | 6.0% | 0 | 7.2% | 0 | 8.3% | 0 | 9.5% | 0 | #DIV/0! |
| Beverage | 0 | 40.0% | 0 | 41.5% | 0 | 42.5% | 0 | 43.5% | 0 | 40.0% | 0 | #DIV/0! |
| Total Food & Beverage | 0 | #DIV/0! | 0 | #DIV/0! | 0 | #DIV/0! | 0 | #DIV/0! | 0 | #DIV/0! | 0 | #DIV/0! |
| Telephone | (21,809) | -130.4% | (21,866) | -129.1% | (21,429) | -122.8% | (21,000) | -116.9% | (20,580) | -111.2% | (41,584) | -47.5% |
| Potential Restaurant Rental | 200,000 | 100.0% | 200,000 | 99.0% | 200,000 | 98.0% | 200,000 | 97.1% | 200,000 | 96.1% | 1,000,000 | 98.0% |
| Antenna | 92,000 | 100.0% | 92,000 | 100.0% | 92,000 | 100.0% | 92,000 | 100.0% | 92,000 | 100.0% | 460,000 | 100.0% |
| Total Departmental Profits | 3,766,881 | 69.0% | 4,386,643 | 76.4% | 4,592,282 | 76.7% | 4,753,298 | 76.7% | 4,933,010 | 76.6% | 22,432,115 | 75.2% |
| | | | | | | | | | | | | |
| UNDISTRIBUTED EXPENSES | | | | | | | | | | | | |
| Administratiave & General | 218,471 | 4.0% | 225,025 | 5.2% | 231,776 | 5.2% | 238,729 | 5.2% | 245,891 | 5.2% | 1,159,891 | 3.9% |
| Credit Card Commissions | 136,544 | 2.5% | 143,611 | 2.5% | 149,594 | 2.5% | 155,011 | 2.5% | 161,052 | 2.5% | 745,812 | 2.5% |
| Management Fee | 163,853 | 3.0% | 172,334 | 3.0% | 179,512 | 3.0% | 186,013 | 3.0% | 193,262 | 3.0% | 894,974 | 3.0% |
| Franchise Fees | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Advertising & Sales | 355,015 | 6.5% | 365,665 | 6.6% | 376,635 | 6.3% | 387,934 | 6.3% | 399,572 | 6.2% | 1,884,822 | 6.3% |
| Repairs & Maintenance | 136,544 | 2.5% | 140,641 | 4.1% | 144,860 | 2.4% | 149,206 | 2.4% | 153,682 | 2.4% | 724,932 | 2.4% |
| Utilities | 147,468 | 2.7% | 151,892 | 2.9% | 156,449 | 2.6% | 161,142 | 2.6% | 165,976 | 2.6% | 782,926 | 2.6% |
| Total Undistributed Expenses | 1,157,895 | 21.2% | 1,199,167 | 20.9% | 1,238,825 | 20.7% | 1,278,034 | 20.6% | 1,319,436 | 20.5% | 6,193,357 | 20.8% |
| | | | | | | | | | | | | |
| House Profit | 2,608,986 | 47.8% | 3,187,476 | 55.5% | 3,353,457 | 56.0% | 3,475,264 | 56.0% | 3,613,575 | 56.1% | 16,238,758 | 54.4% |
| | | | | | | | | | | | | |
| FIXED EXPENSES | | | | | | | | | | | | |
| Taxes | 326,108 | 6.0% | 336,217 | 5.9% | 346,640 | 5.8% | 357,386 | 5.8% | 368,465 | 5.7% | 1,734,816 | 5.8% |
| Insurance | 90,000 | 1.6% | 93,600 | 1.6% | 97,344 | 1.6% | 101,238 | 1.6% | 105,287 | 1.6% | 487,469 | 1.6% |
| Mortgage (Interest only paymen | 1,200,000 | 22.0% | 1,200,000 | 20.9% | 1,200,000 | 20.1% | 1,200,000 | 19.4% | 1,200,000 | 18.6% | 6,000,000 | 20.1% |
| Leases | 1,500 | 0.2% | 1,500 | 0.0% | 1,500 | 0.0% | 1,500 | 0.0% | 1,500 | 0.0% | 7,500 | 0.0% |
| Total Fixed Expenses | 1,617,608 | 29.6% | 1,631,317 | 28.4% | 1,645,484 | 27.5% | 1,660,124 | 26.8% | 1,675,252 | 26.0% | 8,229,785 | 27.6% |
| Capital reserve | 54,618 | 1.0% | 114,889 | 2.0% | 179,512 | 3.0% | 186,013 | 3.0% | 193,262 | 3.0% | 728,294 | 2.4% |
| NOI | 936,760 | 17.2% | 1,441,270 | 25.1% | 1,528,460 | 25.5% | 1,629,128 | 26.3% | 1,745,060 | 27.1% | 7,280,678 | 24.4% |

We have prepared the accompanying projected operating statements for the Mave  Hotel for the five years starting in 2012

. These statements are for information and discussion purposes only. The Mave Hotel is positioned as a 3 Star modern Boutique Hotels with leased out F&B ($16.6K/mo) and roof antenna ($7.66K/mo).

Accordingly, we make no warranties or representation of guarantee regarding the results depicted by these projections.

**<u>Exhibit D</u>**

# MEMORANDUM OF UNDERSTANDING

This will serve as a memorandum of understanding between Madison Hotel Owners LLC, Madison Partners LLC, 62 Madison Partners LLC ("Seller") and CRP Holding SPA, Via Bruno Buozzi 83, Rome, Italy ("Buyer") regarding the investment of Buyer in Seller.

WHEREAS, Madison Hotel Owners LLC (Case No. 11-12334) and Madison Hotel, LLC (Case No. 11-12560) (*collectively* to be referred to a "Debtors") have both filed for bankruptcy protection in the Southern District of New York;

WHEREAS, Seller has filed a Joint Disclosure Statement & Plan of Reorganization Plan (*hereinafter* "Filings" or "Plan of Reorganization");

WHEREAS, pursuant to the filings there is a cash component included to implement the Plan of Reorganization;

WHEREAS, Seller does not have the capital to satisfy the cash component of the Plan of Reorganization;

WHEREAS, Buyer is willing to satisfy the cash component of the Plan of Reorganization on the terms and conditions as contained herein:

NOW THEREFORE, in consideration of the foregoing and the mutual covenants and agreements of the parties herein, the owners hereby agree as follows:

1. **Recitals:** The Recitals are incorporated herein and the parties agree to be bound by the same.
2. **Plan Overview:** Madison Hotel, LLC owns the real property and all improvements at 62 Madison Avenue, New York City ("Property"). On the Property is a 72 Room 12 story Hotel. Madison Hotel Owners LLC owns 100% of the membership interest of Madison Hotel LLC. The Property is encumbered by 62 Madison Lender, LLC ("Lender") which asserts a lien of approximately $21,641,779 as of the date of Madison Hotel LLC's bankruptcy filing. In addition, Madison Hotel Owners, LLC's membership is encumbered by a lien in the amount of approximately $5,000,000 held by an affiliate of Lender ("Mezz").The Debtors also have general unsecured claims in the amount of $5,234,950 of which $4,121,261 is disputed.

It is proposed that upon confirmation of the Plan of Reorganization the Mezz and 25% of the unsecured claims shall be paid in full in cash with all interest at contract rate and all administrative expenses including the Debtors attorneys' fees and Trustee fees

("Payment"). The remaining balances will be paid in 25% increments on the 6, 12 & 18 months following the execution of this MOU, of the unsecured claims.

3. **Buyer Payments:** If the Plan of Reorganization is approved in all respects, Buyer agrees to make the Payment. Buyer has dedicated $5,100,000 in of the funds available into a account of Banca Popolare dell'Emilia Romagna as a good faith deposit to satisfy the Payment. (See attached letter from the bank and translation by attorney)

4. **Buyer Consideration:** In consideration of the Payment the Seller and Buyer has agreed to the terms hereafter:

- Crp Holding will have 60% of the Madison Hotel, LLC that owns the real property
- The buyer and the seller agree that there will be a shareholder agreement which will give minority protection to the seller
- The buyer agrees from now to award seller, at conclusion of all successful negotiation and closing, with an extra 10% in order for seller to reach 50% share ownership at the end of all the negotiations and agreements, post acquisition
- Seller agrees from now that I it will be use the 2.000.000,00 (two million dollars) in cash in the property company bank account to pay for the 25% of the unsecured

...

5. **Closing:** TBD

Dated: New York, New York
   October 17, 2011



Seller:

Madison Hotel Owners LLC


By: Benzion Suky, as Managing Member
of 62 Madison Partners LLC, the Debtor's Manager

And


By: Joseph Ben Moha, as Managing Member
of 62 Madison Partners LLC, the Debtor's Manager


Madison Hotel, LLC


By: Benzion Suky, as Managing Member of 62
Madison Partners LLC, Managing Member of
Madison Hotel Owners LLC

And


Joseph Ben Moha, as Managing Member of 62
Madison Partners LLC, Managing Member of
Madison Hotel Owners LLC

Buyer:


CRP HOLDING SPA

Mr Antonio Conte

President/Director

Seller:

Madison Hotel Owners LLC

By: Benzion Suky, as Managing Member
of 62 Madison Partners LLC, the Debtor's Manager

And

By: Joseph Ben Moha, as Managing Member
of 62 Madison Partners LLC, the Debtor's Manager

Madison Hotel LLC

By: Benzion Suky, as Managing Member of 62
Madison Partners LLC, Managing Member of
Madison Hotel Owners LLC

And

Joseph Ben Moha, as Managing Member of 62
Madison Partners LLC, Managing Member of
Madison Hotel Owners LLC

Buyer:

CRP HOLDING SPA

Mr Antonio Conte

President/Director

**62 Madison Partners LLC**

By: Benzion Suky

By: Joseph Ben Moha

## ALL REAL ESTATE S.r.l.

E-mail: info@crpholding.it

Viale Bruno Buozzi 83 – 00197 Roma
Cap. Sociale 98.000,00
P. Iva 08743401005
Tel.: 06/80692582
Fax: 06/ 3294366



To the Judge of the Bankruptcy Court,

with the present letter the company hereby confirms to be interested in proceeding with the transaction as per MOU signed on October 18th 2011, and it will use financial resources through its Italian bank, Banca Popolare dell'Emilia romagna, to satisfy the financial need of this present procedure. We have reached an agreement with the property company and if your honor will rule in a favorable way for this procedure will comply with our engagements.

kind regards,

Rome, October 19 2011

Antonio Conte
All Real Estate SRL







# Conte International Group

*Corporate Presentation*

*October 2011*



## Conte International Group

**100%**

### Alternative Energy

**60%** **100%** **100%**

**Enital** | **Opicina** | **PALM Oil**

❑ Livorno ❑ Trieste

Assets[2]

❑ €321 million total,
   or $449 million US

❑ €182 million net
   or $253 million US

### Real Estate

❑ Hotels (6)
❑ Mixed Use (1)
❑ Commercial (3)
❑ Residential (5)
❑ Development
   ➢ Mixed Use (1)
   ➢ Residential (2)[1]

### Oil & Gas

**60%** **50%**

**FIAMMA** | **Skyline Aviation**

❑ FIAMMA Retail Gas Station (22)
❑ FIAMMA Storage (7,000 $m^3$ with licenses for 30,000 $m^3$)
❑ Pipeline
❑ Gasoline
❑ Liquid Propane Gas (LPG)

❑ Storage (Dominican Republic and West Africa)
❑ Blending (Dominican Republic)
❑ Trading (approved by JPMorgan Sempra Energy Desk)
❑ LPG
❑ Gasoline
❑ Diesel
❑ Biodiesel
❑ Jet Fuel
❑ PALM Oil

(1) The Company owns a 25% interest in one of the residential developments.
(2) EURO/USD = 1.4

# SEASONED MANAGEMENT TEAM

**Mr. Charles Gargano**
**Chairman**

- Appointed by Governor George Pataki and served as Chairman and CEO of Empire State Development Corporation and Vice-Chairman of the Port Authority of New York and New Jersey from 1995 to 2007
- Spent more than 20 years in public service at the Federal and State level, serving two presidents as well as the administration of Governor Pataki
- MBA and Bachelor's in Civil Engineering from Manhattan Farleigh Dickinson University as well as a Master's degree in Civil Engineering from Manhattan College
- Four Honorary Doctorate Degrees and professional engineering licensee in New York, New Jersey, Connecticut, Oklahoma and Vermont

**Mr. Antonio Conte**
**President & CEO**

- Founder, President and CEO of CR&P Holdings S.p.A., an Italian investment company with approximately €400MM of own assets specializing in real estate and renewable energy
- Obtained a Doctors of Laws degree form the University Federico II of Naples, Italy

**Mr. Riccardo Valentini**
**General Manager &**
**Acting CFO**

- Serves as Managing Partner of CRP Merchant Corporation
- Primarily worked on development of energy assets with particular focus on energy production and storage in Dominican Republic, Italy, Mexico, Peru and Panama
- Previously employed by Credit Suisse Private Banking in Zurich and was a financial advisor in Milan, Italy
- Headed Italian desk team at UBS New York and was Citi Bank Investment Consultant in New York

**Mr. Mario Spetia**
**Board Member**

- Prior press agent in charge for the F.I.A.T. group and currently the press agent of Sergio Marchionne, the F.I.A.T. chief executive

**Ms. Dottie Herman**
**Board Member**

- Current CEO of Prudential Douglas Elliman and has over 33 years of real estate experience
- Dottie was named among the *50 Most Powerful Women in New York* by Crain's New York Business, an honor she received again in 2011

**Conte  International Group**

**Diversified Asset Base**

- ❑ Asset base consisting of renewable energy projects, oil and gas operations, and real estate
- ❑ Asset statement of €321 million and net assets of €182 million

**Competitive Advantages**

- ❑ The targeted utility scale of our projects can improve the economic performance
- ❑ Participation in early stage projects is planned to enhance company margins
- ❑ Renewable energy incentives and attractive feed-in tariffs are expected to create sustainable revenues and profit margins
- ❑ Skyline Aviation recently received approval by JPMorgan Sempra Energy Desk for 50,000 barrels / month
- ❑ Control of feedstock for biomass through acquisition of Palm Oil production facility

**Acquisition and Organic Growth**

Secured
- ❑ Two biomass power plants, with total capacity of 60MW in Italy
- ❑ Palm oil production plant with current capacity of 12,500 tons CPO per year and 120,000 tons CPO per year after increase in infrastructure

Pipeline
- ❑ 500 MW

**Seasoned Management Team**

- ❑ Team has decades of work experience in the renewable energy sector, ranging from project development to design, construction, operation and maintenance of utility scale renewable energy projects

**Conte International Group**

# BUSINESS OVERVIEW – OIL & GAS DIVISION

❑ The Company owns 60% of FIAMMA, a distributor and marketer of LPG, fuel, gasoline and diesel

❑ FIAMMA's main activity is the distribution and marketing of LPG cylinders through segments, small tanks and pipeline networks, while fuel, gasoline, diesel and LPG are distributed through a network of 22 stations owned with the colors FIAMMA 2000

❑ FIAMMA's activities are developed through various sales channels throughout Central Italy, with a strong presence, visibility and customer loyalty, which can estimate a total of about 50,000, in their various types

❑ FIAMMA currently owns 7,000 $m^3$ of storage with licenses to increase to 30,000 $m^3$

❑ FIAMMA develops an aggregate turnover of around €70 million, with investments of over €220

  

❑ Skyline Aviation Group, a fuel trading company owned 50% by Conte, has recently been awarded a supply contracts with power generation plants in the Dominican Republic and with FIAMMA

❑ The Company operates in the Caribbean, Central and South America, Italy and West Africa

❑ The Company has been approved to trade on the physical desk of JPMorgan/Sempra for fuel oil products and has an agreement with Ledge Energy, LLC (JPMorgan partner company ) for all clean products (Gasoline, LPG, etc.)

❑ The Company's clients include power plant generation in the Caribbean, Pemex in Mexico, Sunix the Dominican Republic, Tropigas Dominican Republic, Petrolex Dominican Republic, FIAMMA Italy, Genmeral Work Equatorial Guinea, Royal Petrol Dubai, and Green Point Dubai

❑ The Company has storage in Houston, Texas, Rome, Italy, and Santo Domingo, Dominican Republic




# BUSINESS OVERVIEW – REAL ESTATE

❑  The Company's real estate division consists of 6 hotels held under 3 entities

| Hotel Assets | Location | Rooms | Suites | Restaurant | Conference |
|---|---|---|---|---|---|
| Galzignano Terme Golf & Resort S.r.l.[1] | Padova Italy | | | | |
|    Hotel Sporting | | 93 | 19 | - | - |
|    Hotel Spendid | | 61 | 30 | - | - |
|    Radisson Blue Hotel Majestic | | 45 | 52 | - | - |
|    Hotel Green Park | | 86 | 8 | - | - |
| Ripa Hotel & Resort Spa | Rome, Italy | 200 | 2 | 150 | 568 |
| ES Radisson Blu Hotel | Rome, Italy | 208 | 27 | 170 | 580 |
| **Total** | | **693** | **138** | **320** | **1,148** |







(1) Includes golf course with putting green, driving range and clubhouse, a revital center & SPA, six indoor and open-air thermal pool,
   two olympic-size swimming pool, six tamped earth tennis-court, path-life and shopping centre.



**Conte International Group**

❑ The Company's also owns several other properties including residential, industrial and commercial

| Other Real Estate Assets | Property Type | Square Meters |
|---|---|---|
| Aros S.r.l., Sora (Serapide Center) | Mixed Use | 23,564 |
| Preneste Re S.r.l., Roma (Tor Tre Teste Street) | Commercial | 10,000 |
| Carciano Immobiliare S.r.l., Roma (Carciano Street) | Commercial | 63,456 |
| CR & P Holding S.p.A. | Commercial | |
| Milano, Sarca Avenue | | 8,686 |
| Palermo, Falsomiele Street | | 17,261 |
| Agrigento, Mattarella Street | | 25,398 |
| Antonio S.r.l. (Fregene, Capo d'Orlando Street) | Residential | 550 |
| Antonio S.r.l. (Roma, Bruxelles Street) | Residential | 921 |
| Aral Immobiliare S.r.l. (Porto Cervo, Liscia di Vacca Zone) | Residential Resort | 2,150 |
| Aral Immobiliare S.r.l. (Porto Rotondo, Le Ginestre Residence) | Residential Resort | 102 |
| Bruno Buozzi Immobiliare S.r.l. (Roma, Bruno Buozzi Avenue) | Residential | 506 |
| Antonio S.r.l. (Anzio, della Cannuccia Street) | Mixed Use Development | 7,000 |
| Investimenti Immobiliari S.r.l., Milano (Azario street) | Residential Development | 3,331 |
| Investimenti Immobiliari S.r.l. (Salerno, Sala Abbagnano Zone)[1] | Residential Development | 42,510 |
| **Total** | | **205,435** |





(1) The Company owns 25% interest in the project.

**Conte International Group**

# APPENDIX

# PORTFOLIO

| DESCRIPTION | VALUE | RESTRICTION | OWNERSHIP |
|---|---|---|---|
| Estate located in Anzio (Roma) - district Miglioramento in Cannuccia Street nn. 4/6; 4000 sm around; external areas of over 3000 sm | € 3,000,000.00 | | ANTONIO SRL |
| Industrial estate located in Mestre, district Opicina, of about 5000 sm covered and 25000 sm exposed | € 5,000,000.00 | €        1,700,000.00 | ANTONIO SRL |
| Detached villa located in Fregene, 250 sm, over 300 sm of garden | € 2,000,000.00 | €           900,000.00 | ANTONIO SRL |
| Estate unit located in Rome, in Bruxelles Street so.n of 400sm and with 500 sm of garden | € 6,000,000.00 | €        1,500,000.00 | ANTONIO SRL |
| Detached villa located in Porto Cervo, district Liscia di Vacca, of 250 sm, over 1900 sm of garden | € 2,500,000.00 | €           500,000.00 | ARAL IMMOBILIARE SRL |
| Flat of 100 sm, terrace, parking space, cellar, located in Le Ginestre Square, Porto Rotondo | € 800,000.00 | €             50,000.00 | ARAL IMMOBILIARE SRL |
| Penthouse in Rome, Bruno Buozzi Avenue, 83, of 300 sm covered, over 180 sm of terrace, lock-up garage, cellar | € 4,300,000.00 | €        1,400,000.00 | BRUNO BUOZZI  IMM.RE SRL |
| Hotel Ripa located in Rome, Trastevere Avenue, over 17000 sm, composed of 200 suite | € 50,000,000.00 | €      28,500,000.00 | RIPA HOTEL & RESORT |
| Preliminary contract for the purchase of a complex located in Rome, Tor Tre Teste - commercial allocation, 10000 sm | € 4,600,000.00 | _____ | PRENESTE REAL ESTATE SRL |
| Estate located in Milan, Azario Street  1, 3000 sm, over 15 lock-up garage and 20 cellars | € 21,600,000.00 | €        8,000,000.00 | I.IMM. SRL |
| Preliminary contract for the purchase of an estate located in Rome, Carciano Street (District Tiburtina) of about 55000 sm | € 11,000,000.00(1) | _____ | CARCIANO IMMOBILIARE SRL |

(1) The Company has received a term sheet dated August 10, 2011 to purchase this property for €72 million

**Conte  International Group**

# PORTFOLIO

| DESCRIPTION | VALUE | RESTRICTION | OWNERSHIP |
|---|---|---|---|
| Presentation of an arrangment with members as contractor of a complex located in Sora (FR) composed of about 12.000 sm: over 66 flats and 47 officies. The expected revenue from sales will equal to 55,4 millions Euros in all | € 8,000,000.00 <br><br> Anticipazioni e depositi effettuati | _____ | AROS SRL |
| Preliminary contract for the purchase of the Gepaso s.r.l. 25% shares, that owns 15.000 sm of building ground for accomodiatons in Salerno, district Sala Abbagnano | € 1,800,000.00 | _____ | I.IMM. SRL |
| Thermal baths of Galzignano Hotel (4 hotel with in total about 400 rooms plus bathrooms), golf-course, massages and spa, tennis-court, on about 350.000 sm of buildind ground | € 65,000,000.00 | € 18,000,000.00 | GALZIGNANO TERME GOLF & RESORT SPA |
| Estate located in Milano Bicocca, about 9000 sm rented, Prisman Cavi 1.200.000, 00 Euros annual | € 20,000,000.00 | € 14,000,000.00 | ROCAM SRL |
| Palermo and Agrigento: two estates with in total about 31000 sm, adapted as seat of Enel Servizi and Tema with an annual fee of 800.000,00 Euros | € 12,000,000.00 | € 5,000,000.00 | ROCAM SRL |
| Livorno - industrial area in the dockland; permission for 24MW of biomasses. The value of the area plus the realized facilities equals to 80.000,00 Euros | € 15,000,000.00 | € 6,000,000.00 | ENITAL SRL |
| Craft Carp-Navi, 40 sm to adpt as a rental MBYA | € 4,500,000.00 | € 750,000.00 | LAUDATIO |
| Radisson Blu ES Hotel located in Rome, Turati street 171, for over 16.000 sm, composed of 235 rooms, whose 27 are suites | € 83,000,000.00 | € 53,000,000.00 | PRIMESINT SRL |
| Intermedia Holding SPA-1 mln nominal value shares | € 1,000,000.00 | _____ | ANTONIO SRL |
| **ASSET STATEMENT** | **€ 321,100,000.00** | **€ 139,300,000.00** | |
| **NET STATEMENT** | **€ 181,800,000.00** | | |

**Conte International Group**







