```
                    WordPerfect Document Compare Summary

Original document:  F:\Madison Hotel Owners #11-12334 Case
1\Discl-003.wpd
Revised document:  F:\Madison Hotel Owners #11-12334 Case
1\Discl-005.wpd
Deletions are shown with the following attributes and color:
     Strikeout, Blue  RGB(0,0,255).
     Deleted text is shown as full text.
Insertions are shown with the following attributes and color:
     Double Underline, Redline, Red  RGB(255,0,0).


The document was marked with 14 Deletions, 14 Insertions, 0
Moves.
```

**BACKENROTH, FRANKEL & KRINSKY, LLP**
489 5th Avenue
New York, New York 10017
(212) 593-1100
Counsel to the Debtors


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel Owners, LLC, | Case No. 11-12334 |
| Debtor. | |

-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| Madison Hotel, LLC, | Case No. 11-12560 |
| Debtor. | |

-----------------------------------------------------------x

<u>JOINT DISCLOSURE STATEMENT</u>

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST OF MADISON HOTEL, LLC AND MADISON HOTEL OWNERS, LLC ("DEBTORS"). THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE DEBTORS' PLAN OF REORGANIZATION.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION ANNEXED TO THE DISCLOSURE STATEMENT AS EXHIBIT A.**

<u>**THESE CASES HAVE NOT BEEN SUBSTANTIVELY CONSOLIDATED AND THE PLAN IS COMPRISED OF TWO PLANS; I.E, SEPARATE PLANS FOR EACH DEBTOR.  THE PLAN DOES, HOWEVER, PROVIDE FOR THE MERGER OF THE DEBTORS ON THE EFFECTIVE DATE.  CONFIRMATION OF EACH PLAN IS CONTINGENT UPON CONFIRMATION OF BOTH PLANS.**</u>

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

# **INTRODUCTION**

1.      Madison Hotel, LLC ("Hotel") and Madison Hotel Owners, LLC ("Owners," collectively with Hotel, the "Debtors") submit this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of their Joint Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit "A." All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement  All capitalized terms used but not defined shall have the meaning set forth in the Plan.

2.      This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the Plan. To the extent a Creditor has any questions, the Debtors urge you to contact the Debtors' counsel and every effort will be made to assist you.

3.      THE DEBTORS URGE YOU TO VOTE TO ACCEPT THE PLAN. THE DEBTORS' GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN. IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTORS MAY SEEK TO CONFIRM THE PLAN OVER THE REJECTION OF ANY CLASS UNDER SECTION

1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT

CONFIRMATION OF THE PLAN.

4. On _____, 2011, after notice and a hearing, the
Bankruptcy Court entered an order approving this Disclosure Statement as containing
information of a kind and in sufficient detail in light of the nature and history of the Debtors and
the condition of the Debtors' books and records, to enable Creditors whose votes are being
solicited to make an informed judgment whether to accept or reject the Plan.

5. Creditors should read this Disclosure Statement in its entirety prior to
voting on the Plan. No solicitation of votes may be made except pursuant to this Disclosure
Statement.

6. THE INFORMATION CONTAINED IN THIS DISCLOSURE
STATEMENT HAS BEEN SUPPLIED BY THE DEBTORS. THE DEBTORS' BOOKS AND
RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE
DEBTORS' FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE
STATEMENT. BASED UPON THE INFORMATION MADE AVAILABLE, DEBTORS'
COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION
DISCLOSED HEREIN IS INACCURATE. NEITHER THE DEBTORS NOR DEBTORS'
COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO

INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE

INFORMATION CONTAINED HEREIN INACCURATE.

7.      After reviewing this Disclosure Statement, indicate your vote to accept or

to reject the Plan on the enclosed ballot, and return the ballot to: Backenroth Frankel & Krinsky,

LLP, 489 Fifth Avenue, New York, New York 10017, on or before

_____, 2011.  LATE BALLOTS WILL NOT BE COUNTED.

8.      The Bankruptcy Court has entered an Order fixing

_____, 2011, at _____ a.m., at the United States Bankruptcy Court,

One Bowling Green, New York, New York as the date, time and place for the hearing on

confirmation of the Plan and fixing _____, 2011, as the last date for the

filing of any objections to confirmation of the Plan.

## GENERAL INFORMATION REGARDING THE DEBTORS

9.      On May 16, 2011 Madison Hotel Owners, LLC filed its Chapter 11

petition, and on May 26, 2011, Madison Hotel LLC filed its Chapter 11 petition.

10.      Madison Hotel, LLC owns the real property located at 62 Madison

Avenue, New York, New York (the "Property").   The Property is a 72 room 12 story hotel.

Madison Hotel Owners LLC owns 100% of the membership interests of Madison Hotel, LLC.

11.     The Debtors estimate that the value of the Property is approximately $32,000,000.  An appraisal is pending.

12.     The Property is encumbered by a lien presently held by 62 Madison Lender, LLC (the "Lender"), which the Lender asserts is in the amount of approximately $21,641,779 (the "Building Loan") as of the Petition Date.  In addition, Madison Hotel Owners, LLC's membership interest in Madison Hotel LLC is encumbered by a lien in the amount of approximately $5,000,000 (the "Mezzanine Loan") held by an affiliate of the Lender.

13.     The Debtor's general unsecured claims total approximately $1,113,689 plus a disputed general unsecured claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

14.     The Debtors' financial problems arise from the economic downturn which caused the Property's income to drop, which in turn, impaired the hotel's cash flow.  The Building Loan was initially entered into within days of the Lehman Brother bankruptcy, and shortly thereafter the Lender's predecessor in interest applied enormous pressure to obtain the Debtors' consent to an increase in the interest rate from 7.5% to 12%, which further squeezed cash flow. The Building Loan went into arrears, a foreclosure action was commenced, and a receiver appointed.

15.     At this point in their Chapter 11 cases, the Debtors have not objected to the receiver's continued operation of the Property.  The receiver continues to operate and the Debtors have consented to the payment of post-petition debt service to the lenders at the non-default contract rate.

16.     The Plan proposes to pay the Building Loan over time on terms that would be the indubitable equivalent of a market based note and mortgage.  As to the Mezzanine Loan, the Debtors' intention is to simply pay the amount due in full under the Plan.  These cases have not been substantively consolidated and the Plan is comprised of two plans; i.e, separate plans for each Debtor.  Confirmation of each plan contingent upon confirmation of both Plans.

## THE DEBTORS' PLAN OF REORGANIZATION
## CLASSIFICATION AND TREATMENT OF CLAIMS

### Owners Class 1: Nomad Mezz Lending, LLC Secured Claim

17.     **Classification** –  Claim held by Nomad Mezz Lending LLC secured by the Debtor's membership interest in Hotel.  Such Claim totals approximately $5,000,000.

18.     **Treatment** – Payment in full in Cash on the Effective Date with interest at the contract rate.

19.     **Voting** – Unimpaired and deemed to have accepted the Plan.

7

**Owner Class 2: Priority Claims**

20.    **Classification** – Allowed Priority Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.  The Debtor is aware of no such Claims.

21.    **Treatment**  – Payment in full in cash on the Effective Date with interest at the statutory rate.

22.    **Voting** – Unimpaired and deemed to have accepted the Plan.

**Owner Class 3: General Unsecured Claims**

23.    **Classification**  – Allowed Unsecured Claims.  Such Claims total approximately $1,113,689 plus a disputed claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

24.    **Treatment** – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the ~~Legal~~

~~R~~New York judgment ~~r~~ate from the Petition Date through the final payment. ~~Payment shall be jointly and severally due by Owner and Hotel.~~

25.    **Voting** – Impaired and entitled to vote accept or reject the Plan.


### Owner Class 4: Convenience Class


26.    **Classification** – Unsecured Claims totaling less than $1,500.


27.    **Treatment**  – Payment in full in cash plus interest at the ~~Legal R~~New York judgment ~~r~~ate on the Effective Date.


28.    **Voting** – Unimpaired and deemed to have accepted the Plan.


### Owner Class 5: Equity Interests


29.    **Classification** – Interest Holders.


30.    **Treatment** -- Entitled to maintain ownership of ~~Interests in exchange for advancing sufficient funds to pay~~approximately 50% of their Interests pursuant to the agreement with CRP Holding SPA to fund the Plan.  On the Effective Date ~~amounts due under the Plan,~~

~~plus such amounts as may be necessary to ensure payment of post-Effective Date amounts.~~ Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.

31. **Voting** – Impaired and entitled to vote accept or reject the Plan.

### Hotel Class 1: New York City Lien Charges

32. **Classification** – Real estate tax, water, sewer and other lien charges held by the City of New York which constitute first liens on the Property. The Debtor estimates that no such Claims are due.

33. **Treatment** – Payment in full in cash with interest at the statutory rate.

34. **Voting** – Unimpaired and deemed to have accepted the Plan.

### Hotel Class 2: 62 Madison Lender, LLC

35. **Classification** – First mortgage on the Property. The Claimant estimates that the Class 2 Claim totals $21,641,779 as of the Petition Date.

36. **Treatment** – Monthly interest payments on the Allowed Amount of the Claim at an annual interest rate of 5.5% for 60 months, plus monthly amortization payments

based upon a 30 year amortization schedule. Outstanding principal amount due at maturity, subject to a 60 sixty month renewal at then prevailing market rates. Documentation shall be pursuant to standard recordable forms.

37. **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## Hotel Class 3: Priority Claims

38. **Classification** – Claims under Sections 507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code. The Debtor is aware of no such Claims.

39. **Treatment** – Payment in full in cash plus interest at the Statutory Rate on the Effective Date.

40. **Voting** – Unimpaired and deemed to have accepted the Plan.

## Hotel Class 4: General Unsecured Creditors

41. **Classification** – Allowed Unsecured Claims. Such Claims total approximately $1,113,689 plus a disputed general unsecured claim in the amount of $4,121,261 filed by Express Service Capital, Inc. for a total of $5,234,950.

42. **Treatment** – 25% of the allowed amount of such Claims shall be paid in cash on the Effective Date, 25% shall be paid on the 6 month anniversary of the Effective Date, 25% shall be paid on the 1 year anniversary of the Effective Date, and 25% shall be paid on the 18 month anniversary of the Effective Date.  The amount due shall accrue interest at the ~~Legal R~~New York judgment rate from the Petition Date through the final payment.  ~~Payment shall be jointly and severally due by Owner and Hotel.~~

43. **Voting** – Impaired and entitled to vote accept or reject the Plan.

### Hotel Class 5: Convenience Class

44. **Classification** – Unsecured Claims totaling less than $1,500.

45. **Treatment** – Payment in full in cash plus interest at the ~~Legal R~~New York judgment rate on the Effective Date.

46. **Voting** – Unimpaired and deemed to have accepted the Plan.

### Hotel Class 6: Equity Interests

47. **Classification** – Class 6 consists of Owner, Hotel's Interest Holder.

48. **Treatment** -- Entitled to maintain ownership of ~~Interests in exchange for advancing sufficient funds to pay~~ approximately 50% of their Interests pursuant to the agreement with CRP Holding SPA to fund the Plan. On the Effective Date ~~amounts due under the Plan, plus such amounts as may be necessary to ensure payment of post-Effective Date amounts.~~ , Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.

49. **Voting** – Impaired and entitled to vote accept or reject the Plan.

## ADMINISTRATIVE EXPENSES AND U.S. TRUSTEE FEES

50. Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtors shall be Paid in full or performed by the Debtors in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.

51. Backenroth Frankel & Krinsky LLP, as counsel for the Debtors, received a $50,000 retainer from Owners and a $25,000 retainer from Hotel. Backenroth Frankel &

Krinsky, LLP anticipates that total fees for these cases will exceed that amount in the event that confirmation of the Plan necessitates extensive litigation.

52.    United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtors.

## MEANS FOR IMPLEMENTATION OF THE PLAN

53.    On the Effective Date, Madison Hotel LLC shall be merged into Madison Hotel Owners, LLC.  The Debtors intend to fund the Plan through cash on hand held by the receiver of the Property, operating revenue generated by the operations of Hotel and by additional amounts to be advanced by Owner and its membersCRP Holding SPA.  Monthly operating projections for Hotel are set forth on Exhibit C to the Disclosure Statement.  CRP Holding SPA's written commitment to fund the Plan and evidence of its financial ability and its parent company, Conte International Group, to do so is annexed as Exhibit D to the Disclosure Statement.

54.    Confirmation of each Plan shall be contingent upon confirmation of both Plans.  The Debtors shall be the disbursing agent under the Plan.  The Debtors shall also be the responsible party for filing post-confirmation reports.

55.    As of the Effective Date, in consideration for the value provided to effectuate the plan, to the fullest extent permissible under law, the Holders of Claims

release and forever waive and discharge as against the Debtors, each of their respective affiliates, parent companies and subsidiaries, members, partners, successors, heirs, assigns, representatives and their managing members solely in their capacity as managing members, including without limitation BenZion Suky and Joseph BenMoha ,all actions, costs, claims, causes of action, damages, demands debts, expenses (including attorneys fees), judgments, losses (including any claims for contribution or indemnification), liabilities, obligations, rights or suits, whether matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date relating in any way to the Debtors or the Chapter 11 Cases; provided, that the foregoing shall not constitute a waiver or release of any right of the Holder of an Allowed Claim or any of the rights of any parties in respect of liabilities assumed by the Reorganized Debtors under this Plan, the releases set forth in this paragraph shall be binding upon and shall inure to the benefit of the Reorganized Debtors.

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

56. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be assumed under the Plan. The Debtors are unaware of any executory contracts or leases.

## FINANCIAL INFORMATION AND LIQUIDATION ANALYSIS

57.     Annexed hereto as Exhibit B are the Debtors' balance sheets and liquidation analyses.

58.     The Debtors assume that in a liquidation, the Debtors' assets would exceed their liabilities, but that depending upon the amount of Allowed general unsecured claims, after payment Chapter 7 liquidation expenses, general unsecured creditors may not be paid in full, as proposed under the Plan.

## PREFERENCE AND FRAUDULENT CONVEYANCE ANALYSIS

59.     The right to pursue preference, fraudulent conveyances or other types of claims under 11 U S.C. §544(b), 547, 548, 549, and 550 or applicable state law will survive the Plan, and the Debtors shall have the exclusive right to prosecute such claims.

60.     The Debtors believe that there are no such claims.

## OBJECTIONS TO CLAIMS

61.     The Debtors reserve their rights to file objections to Claims in the event grounds exist to object to particular Claims.  Such objections will be filed no later than 120 days

after the Effective Date.  In the event that objections to claims are filed, the amount of distributions that may have to be made on such claims shall be segregated by the Debtors until the resolution of such objections.

## MANAGEMENT OF THE DEBTORS

62.     The Debtors are managed currently by Benzion Suky and Joseph BenMoha, and management will remain unchanged under the Plan.

## TAX CONSEQUENCES

63.     The Debtors do not believe that there will be any negative tax consequences to the Debtors or to Creditors under the Plan.  Plan payments may constitute taxable income.

64.     THE DEBTORS DO NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

# VOTING

65.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each Creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2011, at the following address:

Backenroth Frankel & Krinsky, LLP
489 Fifth Avenue
New York, New York 10017

66.     Each Creditor of the Debtors whose Claim is impaired[1] under the plan is entitled to vote, if either (I) its Claim has been scheduled by the Debtors, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filing.  Simply stated, a Creditor is impaired if it is being paid less than it is owed.

---

[1]   **Definition of Impairment**.  Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan unless, With respect to each claim or equity interests of such class, the plan:

     **a.**        leaves unaltered the legal equitable, and contractual rights of the holder of such claim or interest; or

     **b.**        notwithstanding any contractual provision or applicable law that entities the holder of a claim or interest to receive accelerated payment of his claim or interest after the occurrence of a default:

(A)     cures any default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

(B)     reinstates the maturity of such claim or interest as it existed before the default;

(C)     compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(D)     does not otherwise alter the legal equitable, or contractual rights to which such claim or equity interest entities the holder of such claim or interest.

67.     Owner Classes 1 and 3 and Hotel Classes 2 and 4 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.

68.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

69.     A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

70.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds in amount and a majority in number of the Creditors actually voting cast their ballots in favor of acceptance.

71.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

72.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

73.     By order of the Bankruptcy Court dated _____, 2011, the Confirmation Hearing has been scheduled for _____, 2011, in Judge Glenn's Courtroom, United States Bankruptcy Court, One Bowling Green, New York, New York 10004.     The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____, 2011:

Backenroth Frankel & Krinsky, LLP
489 Fifth Avenue
New York, New York 100 17
Mark A. Frankel, Esq.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

74.     At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:

a.      The Plan Complies with the applicable provisions of the Bankruptcy Code;

b.      The Debtors have complied with the applicable provisions of the Bankruptcy Code;

c.      The Plan has been proposed in good faith and not by any means forbidden by law;

d.      Any Payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

e.      The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtors have disclosed the identity of any insider that will be employed or retained by the reorganized Debtors, and the nature of any compensation for such insider;

f.      With respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, in an amount that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code;

g.      Each class of Claims or interests has either accepted the Plan or is not impaired under the Plan;

h.     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date;

i.     At least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class; and

j.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successors to the Debtors under the Plan unless such liquidation or reorganization is proposed in the Plan.

75.     The Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

76.     The Debtors contend that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

**CONFIRMATION OVER THE OBJECTION OF AN IMPAIRED CLASS**

77.     In the event that any impaired class of Claim does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired

class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." The Debtors may invoke the provisions of section 1129(b) to any impaired class that does not accept the Plan.

78. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

79. With respect to a Secured Claim, "fair and equitable" means either:

(a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred Cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens;

(b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or

(c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

80. With respect to an Unsecured Claim, "fair and equitable" means either:

(a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or

(b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

81.     In the event one or more classes of impaired Claims rejects the plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## CONCLUSION

The Debtors urge the Debtors' Creditors to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than _____, 2011.

Dated: New York, New York
~~July 29~~October 19, 2011

                                                    **Madison Hotel Owners, LLC**

       By:  s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager
                -and-
       By:  s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, the Debtor's Manager

       **Madison Hotel, LLC**

       By: s/Benzion Suky, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member
                -and-
       By: s/Josef Ben Moha, as Managing Member of 62 Madison Partners LLC, Managing Member of Madison Hotel Owners, LLC, the Debtor's Managing Member

       **BACKENROTH FRANKEL & KRINSKY, LLP**
       Attorneys for the Debtors

       By:_____s/Mark Frankel_____
            489 Fifth Avenue
            New York, New York 10017
            (212) 593-1100

# EXHIBIT B

## OWNER ASSETS AND LIABILITIES

<u>Assets</u>
Personal property ............................................................................. $7,000,000

<u>Liabilities</u>
Nomad Mezz Lending Claim............................................................. $5,000,000
General Unsecured Claims................................................................ <u>$5,234,950</u>
Total                                                                                       $10,234,950

## OWNER CHAPTER 7 LIQUIDATION ANALYSIS

<u>Assets</u>
Personal Property.............................................................................. $7,000,000

<u>Liabilities</u>
Nomad Mezz Lending Claim.............................................................. $5,000,000
Administration Claims....................................................................... $   700,000
General Unsecured Claims................................................................. <u>$1,300,000 </u>
Total                                                                                        $7,000,000

Note: Claims subject to objection, and joint and several liability exists on General Unsecured Claims

## HOTEL ASSETS AND LIABILITIES

Assets
| | |
|---|---|
| Real Property ........................................................................................... | $32,000,000 |
| Cash on Hand (estimated)............................................................................. | 1,613,117 |
| Total........................................................................................................ | $33,613,117 |

Liabilities
| | |
|---|---|
| Real Estate Tax Lien................................................................................... | $    -0- |
| 62 Madison Lender LLC First Mortgage ......................................................... | $21,641,779 |
| General Unsecured Claims............................................................................. | $  5,234,950 |
| Total | $26,876,729 |

## HOTEL CHAPTER 7 LIQUIDATION ANALYSIS

Assets
| | |
|---|---|
| Real Property ........................................................................................... | $32,000,000 |
| Cash on Hand (estimated)............................................................................. | 1,613,117 |
| Total........................................................................................................ | $33,613,117 |

Liabilities
| | |
|---|---|
| Real Estate Tax Lien................................................................................... | $    -0- |
| 62 Madison Lender LLC First Mortgage ......................................................... | $21,641,779 |
| Administration Claims.................................................................................. | $  3,200,000 |
| General Unsecured Claims............................................................................. | $  5,234,950 |
| Total | $30,076,729 |

Note: Claims subject to objection, and joint and several liability exists on General Unsecured Claims

**<u>Exhibit C</u>**

To be supplied