UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re

MADISON HOTEL, LLC,

                Debtor.

--------------------------------------------------------x

Chapter 11

Case No.  11-12560 (MG)

## ORDER CONFIRMING SECOND MODIFIED THIRD AMENDED PLAN OF REORGANIZATION FOR MADISON HOTEL, LLC SUBMITTED BY 62 MADISON LENDER, LLC

**THIS CASE** came on for hearing on April 9, 2013 (the "Confirmation Hearing") to consider: (a) confirmation of the "*[Proposed] Second Modified Third Amended Plan of Reorganization For Madison Hotel, LLC*", dated November 9, 2012 [D.R. No. 137] (in the form annexed hereto as Exhibit "1" and incorporated herein, and together with (a) the Plan Supplement (defined below) in the form annexed hereto as Exhibit "2" and incorporated herein, and (b) the Plan Modifications (defined below) set forth herein (and announced on the record of the Confirmation Hearing), collectively the "Plan"). Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Plan.

In connection with the Confirmation of the Plan, the Court has considered the following matters submitted by the Plan Proponent in support of Confirmation of the Plan: (a) *Supplement to [Proposed] Second Modified Third Amended Plan of Reorganization For Madison Hotel, LLC*, dated March 15, 2013 ("Plan Supplement") [D.R. No. 181]; (b) *Declaration Of David J. Steinberg In Support Of Confirmation Of The Second Modified Third Amended Plan Of Reorganization For Madison Hotel, LLC Pursuant To Chapter 11 Of The United States Bankruptcy Code*, sworn to on April 5, 2013 ("Confirmation Declaration") [D.R. No. 209]; (c) *Memorandum of Law In Support Of Confirmation Of The Second Modified Third Amended Plan Of Reorganization For Madison Hotel, LLC Under Chapter 11 Of The Bankruptcy Code*, dated April 5, 2013 (the "Confirmation Memorandum")[D.R. No. 210], (d)

*Declaration Certifying The Tabulation Of Ballots Accepting Or Rejecting The Second Modified Third Amended Plan Of Reorganization*, dated March 29, 2013 (the "Ballot Tabulation") [D.R. No. 197]; (e) *Application by 62 Madison Lender LLC for Allowance of Amended Secured Claim*, filed March 8, 2013 (the "Amended Claim Application") [D.R. No. 178]; and (f) *Affirmation of J. Joseph Jacobson in Support of Application by 62 Madison Lender LLC for Allowance of Amended Secured Claim*, filed March 8, 2013 [D.R. No. 179].

On February 22, 2013, the Court entered its "*Order (A) Approving Second Modified Third Amended Disclosure Statement; (B) Establishing Treatment Of Claims For Notice And Voting Purposes; (C) Establishing Deadline And Procedures For Temporary Allowance Of Claims For Voting Purposes; (D) Approving Solicitation Package And Procedures For Distribution; (E) Approving Form Of Ballot; (F) Establishing Voting Deadline And Procedures For Tabulation Of Votes; (G) Scheduling Confirmation Hearing To Consider Confirmation Of Plan; (H) Approving Form And Manner Of Notice Of Confirmation Hearing And Procedures For Filing Objections To Confirmation; And (I) Granting Related Relief*" (the "DS Approval Order") [D.R. Nos. 175]. As evidenced by the Certificate of Service on file with the Clerk of the Court [D.R. No. 177], the Disclosure Statement, the Plan, the DS Approval Order, a notice of the date, time and place of the Confirmation Hearing, and a Ballot were each distributed to creditors and parties-in-interest on February 25, 2013.

The Court, having considered the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Declaration, the Confirmation Memorandum, the Ballot Tabulation, the Amended Claim Application, and the following objections to Confirmation of the Plan and/or the Amended Claim Application: (i) *Express Service Capital, Inc.'s Objection to Confirmation of the Second Modified Third Amended Plan of Reorganization for Madison Hotel, LLC*, filed March 28, 2013 [D.R. No. 193]; (ii) *Express Service Capital, Inc.'s Objection to Application by 62 Madison Lender, LLC for Allowance of Amended Secured Claim*, filed March 28, 2013 [D.R. No. 192]; (iii) *Declaration in Support of Express Service Capital, Inc.'s Objection to Confirmation of the Second Modified Third Amended Plan and in*

- 2 -

*Opposition to 62 Madison Lender, LLC's Motion  for Allowance of Amended Secured Claim*, filed March 28, 2013 [D.R. No. 194]; and (iv) *Debtor's Objection to Mortgagee's Plan and to Mortgagee's Motion for Claim Allowance*, filed March 28, 2013 [D.R. No. 195] (collectively, "Confirmation Objections"), and the Plan Proponent's responses thereto: (a) *Motion to Strike Declaration Of Gerard R. Luckman Filed In Support Of Express Service Capital Inc.'s Objections To (A) 62 Madison Lender LLC'S Second Modified Third Amended Plan And (B) 62 Madison Lender LLC's Motion For Allowance Of Amended Secured Claim*, filed April 5, 2013 [D.R. No. 204]; (b) *Reply Of 62 Madison Lender LLC To Express Service Capital, Inc.'s Objection To Confirmation Of The Second Modified Third Amended Plan Of Reorganization For Madison Hotel LLC*, filed April 5, 2013 [D.R. No. 206]; (c) *Reply In Further Support Of Application By 62 Madison Lender LLC For Allowance Of Amended Secured Claim*, filed April 5, 2013 [D.R. No. 207]; (d) *Affirmation Of David Steinberg In Response To Objections Of Express Service Capital, Inc.*, filed April 5, 2013 [D.R. No. 208]; and Express Service Capital, Inc.'s ("Express") *Opposition to Motion to Strike Declaration Of Gerard R. Luckman Filed In Support Of Express Service Capital Inc.'s Objections To (A) 62 Madison Lender LLC'S Second Modified Third Amended Plan And (B) 62 Madison Lender LLC's Motion For Allowance Of Amended Secured Claim*, filed April 8, 2013 [D.R. No. 211]; the documentary and testimonial evidence presented at the Confirmation Hearing and the documents and materials attached hereto, and the arguments of all counsel present at the Confirmation Hearing, makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052(a), made applicable to this matter pursuant to Bankruptcy Rule 9016.

## Findings of Fact and Conclusions of Law

**A.    Commencement of Chapter 11 Case**

1.    This Chapter 11 case (the "Chapter 11 Case") was commenced by the Debtor on May 26, 2011 by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.

2.    Since the Petition Date, the Debtor has continued throughout this case to operate as debtor in possession; however, in accordance with Section 543(d)(1) of the Bankruptcy Code, Margaret H. Mayo, as the temporary receiver appointed by the New York State Supreme Court (the "Receiver"), has continued to possess, manage and control, inter alia, the Hotel Property since the Petition Date.

3.    No trustee, examiner, or official unsecured creditors' committee has been appointed in the Chapter 11 Case.

**B.    Jurisdiction and Venue**

4.    The Court has jurisdiction to conduct the Confirmation Hearing and to confirm the Plan pursuant to 28 U.S.C. § 1334.

5.    Confirmation of the Plan is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(L), and this Court has jurisdiction to issue and enter a final order with respect thereto.

**C.    Transmittal/Service of Plan Documents; Adequacy of Notice**

6.    Timely and proper notice of the Confirmation Hearing and of the time fixed for filing objections to Confirmation and for submitting Ballots to the Voting Agent indicating either an acceptance or rejection of the Plan was given to all creditors and parties in interest in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules of this Court, and Orders of this Court, including, without limitation, the DS Approval Order.

7.    The notice provided was due, adequate, and sufficient to notify all appropriate creditors and parties in interest of the Confirmation Hearing, the dates fixed to file objections and to submit Ballots, and other deadlines. The notice also complied in all respects with the DS Approval Order, the Bankruptcy Code, the Bankruptcy Rules (including, without limitation, Fed.R.Bankr.P. 2002, 3018, 3019,

- 4 -

and 9006), and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

**D.**    **Solicitation**

8.    In accordance with Section 1126(b) of the Bankruptcy Code, the solicitation of votes to accept or reject the Plan complied with all applicable law, rules, and regulations governing the adequacy of disclosure in connection with such solicitation. Solicitation was conducted after disclosure of "adequate information," as such term is defined in Section 1125(a) of the Bankruptcy Code.

**E.**    **Balloting**

9.    The Plan Proponent has solicited the votes and tabulated the Ballots in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and the DS Approval Order.

10.    Except as otherwise noted in the Ballot Tabulation, the Plan was voted on by all Classes of Impaired Claims and Equity Interests that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the DS Approval Order.

11.    The Ballot Tabulation validly and correctly sets forth the tabulation of votes on the Plan, as required by the Bankruptcy Code, Bankruptcy Rules, Local Rules of this Court, and the DS Approval Order.

12.    As set forth in the Ballot Tabulation, the following Classes of Claims and Equity Interests voted to accept the Plan: Class 1.

13.    As set forth in the Ballot Tabulation, as of the Ballot Date the following Classes of Claims and Equity Interests voted to reject the Plan: Class 3. However, as set forth in Paragraph 17 below, at the Confirmation Hearing Express requested, and this Court granted it, the right to change its vote from a rejection of the Plan to an acceptance of the Plan in accordance with Bankruptcy Rule 3018(a). Class 3 has therefore voted to accept the Plan, as modified by the Plan Modifications.

14.    As set forth in the Ballot Tabulation, no votes were cast in either Class 2 or Class 4 under the Plan. As a result, and in accordance with the DS Approval Order, each of Class 2 and Class 4 are deemed to have abstained with regard to the Plan, and therefore, in accordance with Section 1126 of the

Bankruptcy Code, both of Classes 2 and 4 are deemed to have rejected the Plan.

15. As set forth in the Ballot Tabulation, the Plan has been accepted in writing by the requisite majorities of Class 1, which is an "impaired" class of claims. The Plan Proponent has sought "cramdown" with respect to Classes 2, 3 and 4 in accordance with Section 13.1 of the Plan and Section 1129(b) of the Bankruptcy Code.

**F.    Objections to Confirmation**

16. As a result of the Plan Proponent's agreement to the Plan Modifications, all Confirmation Objections filed by Express and the Debtor were resolved and/or withdrawn at the Confirmation Hearing, and, accordingly, in accordance with Bankruptcy Rule 3018(a) Express requested, and this Court granted it, the right to change its vote from a rejection of the Plan to an acceptance of the Plan.

17. All other Confirmation Objections are determined to have been resolved and/or withdrawn prior to or at the Confirmation Hearing, and to the extent not resolved and/or withdrawn are hereby overruled.

**H.    Benefit to Creditors**

18. The Plan (including the Plan Supplement), the statements of counsel, and the entire record of this Chapter 11 Case reveal that the transactions contemplated by the Plan (including the Plan Modifications) will provide significant benefits to creditors and will provide for payments to be made on account of Allowed Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, and General Unsecured Claims.

**I.    Plan Compliance with Bankruptcy Code**

19. The Plan Proponent has complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with this Chapter 11 Case. The Plan Proponent has therefore satisfied Section 1129(a)(1) of the Bankruptcy Code.

20. The Plan Proponent has properly solicited votes with respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as well

as the DS Approval Order. The Plan Proponent has therefore satisfied Section 1129(a)(2) of the Bankruptcy Code.

**J.**      **Compliance with Sections 1122 and 1123**

21.      The Plan satisfies all of the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies "62 Madison Lender, LLC" as the proponent of the Plan.

22.      In accordance with Section 1122(a) of the Bankruptcy Code, Articles IV and V of the Plan classifies each Claim against and Equity Interest in the Debtor in a manner such that the other claims in each such class(es) are substantially similar to the other Claims or Equity Interests in such class(es). The Plan, therefore, satisfies Section 1122(a) of the Bankruptcy Code.

23.      The Plan adequately and properly classifies all Claims and Equity Interests required to be classified, and, accordingly, satisfies Section 1123(a)(l) of the Bankruptcy Code.

24.      Pursuant to Articles IV and V of the Plan, all Classes of Claims are identified as either unimpaired or impaired. Accordingly, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

25.      Article VI of the Plan specifies the treatment of each Impaired Class of Claims and Equity Interests. Accordingly, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

26.      The Plan provides the same treatment for each Claim or Equity Interest in a particular Class unless the holder of such a Claim or Equity Interest agreed to less favorable treatment. Accordingly, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

27.      Article VII of the Plan sets forth the means by which the Plan will be implemented. The Plan makes adequate means for its implementation, and accordingly satisfies Section 1123(a)(5) of the Bankruptcy Code.

28.      As and to the extent applicable, the Plan Proponent has disclosed the identity of the person who will serve as the trustee under the Liquidation Trust (the "Trust") to be established pursuant to the Plan. Accordingly, the Plan satisfies Section 1123(a)(7) of the Bankruptcy Code.

**K.**      **Executory Contracts and Leases**

29.     The Plan provides that the Plan Proponent shall designate in the Plan Supplement any unexpired lease or executory contract that it (or its designee) intends to have assumed or rejected effective as of the Effective Date.

30.     In accordance with Section 365 of the Bankruptcy Code, the Plan Proponent (and/or its designee) has determined to designate for assumption those executory contracts and/or unexpired leases set forth on Exhibit "A" to the Plan Supplement and incorporated herein (collectively, the "<u>Assumed Contracts</u>") to the extent such contracts have not been terminated prior to the Effective Date under the Plan.

31.     In the event any unexpired lease or executory contract is not designated by the Plan Proponent (or its designee) as an Assumed Contract, then such unexpired lease or executory contract shall be deemed rejected as of 11:59 p.m. on the day immediately preceding the Effective Date. All parties to rejected contracts or leases shall have thirty (30) days from the Effective Date to file a rejection damages claim.

**L.     Plan Proposed in Good Faith**

32.     This Court has examined the totality of the circumstances surrounding the formulation of the Plan and finds that the Plan has been proposed in good faith by the Plan Proponent. The Plan Proponent has acted in good faith in formulating and proposing the Plan. The Plan Proponent has acted in good faith and received no unfair advantage. The primary purpose of the Plan is to provide the highest possible return to creditors. Accordingly, the Plan Proponent has satisfied Section 1129(a)(3) of the Bankruptcy Code.

33.     62 Madison Lender, LLC, as Plan Proponent, its Representatives, equity holders, directors, officers, employees, attorneys, financial advisors, investment bankers and other professionals have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and consummation of the Plan, and accordingly, have satisfied Section1125(e) of the Bankruptcy Code.

**M.     Preservation of Causes of Action**

34.     Except as may be specifically set forth in the Plan and/or this Confirmation Order,

- 8 -

nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Chapter 11 Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Chapter 11 Case as if the Chapter 11 Case had not been commenced.

**N.**     **Payments for Services**

35.     All payments to be made by the Plan Proponent to professionals retained by Order of the Court for services or for costs and expenses in or in connection with the Chapter 11 Case, through the Confirmation Date, have been or are subject to review and approval by this Court upon the pending, and any supplemental, applications filed under Sections 330, 331 or 503(b) of the Bankruptcy Code. Accordingly, the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

**O.**     **Directors and Officers**

36.     The Plan provides that upon the occurrence of the Effective Date, the Liquidating Trustee will be vested with the power to direct the affairs of the Debtor as provided in the Liquidating Trust Agreement and the Plan. Furthermore, in the Plan Supplement the Plan Proponent has identified the individual/firm proposed to serve in the role of "Liquidating Trustee" after Confirmation of the Plan, as well as the relevant engagement terms and conditions. As such, the requisite identifications have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy. Under these circumstances, the Plan satisfies Section 1129(a)(5) of the Bankruptcy Code.

**P.**     **Governmental Regulation of Rates**

37.     The Plan does not provide for any changes in rates that require regulatory approval of any

governmental agency. Section 1129(a)(6) of the Bankruptcy Code therefore is not applicable.

**Q.**      **Best Interest of Creditors**

38.      The Plan is in essence a liquidating plan, under which the estate's interests in the Debtor's principal assets shall be sold to the highest and/or best bidder at auction, following which the net proceeds of such sale shall be distributed to creditors consistent with the Plan. Each Holder of a Claim that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code that has not accepted the Plan will therefore receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests" test under Section 1129(a)(7)(A)(ii) of the Bankruptcy Code.

**R.**      **Acceptance; Deemed Rejection of the Plan by Certain Classes**

39.      The Plan satisfies Section 1129(a)(10) of the Bankruptcy Code because at least one Impaired Class has voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by Insiders.

40.      Pursuant to the Ballot Tabulation, the following Classes of Claims voted to reject the Plan:  Class 3. However, as set forth in Paragraph 17 above, at the Confirmation Hearing Express requested, and this Court granted it, the right to change its vote from a rejection of the Plan to an acceptance of the Plan in accordance with Bankruptcy Rule 3018(a). Class 3 has therefore voted to accept the Plan, as modified by the Plan Modifications.

41.      Pursuant to the Ballot Tabulation, the following Classes of Claims and Equity Interests failed to vote on the Plan, and therefore are deemed to have rejected the Plan: Class 2 and Class 4.

42.      As a result, the Plan does not satisfy Section 1129(a)(8) with respect to Classes 2 and 4. Accordingly, the Plan Proponent seeks Confirmation of the Plan pursuant to Section 1129(b)(2)(B) of the Bankruptcy Code with respect to each of the aforementioned Classes.

43.      The Plan provides that with respect to Claims and Equity Interests in Classes 2 and 4, the Holder of any such Claim(s) or Equity Interest(s) that are junior to Claims and/or Equity Interests in such

Classes will not receive or retain any property under the Plan until such time as such Claims are paid in full. As a result, the provisions of Section 1129(b)(2)(B) are satisfied with respect to each such Class.

**S.**    **Administrative Expenses; Priority Claims; Priority Tax Claims**

44.    Section 3.1 of the Plan provides that except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid the full amount thereof from Hotel Cash on Hand, in Cash and without interest, as soon as practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim. The Plan therefore satisfies Section 1129(a)(9) of the Bankruptcy Code.

45.    Section 7.1 of the Plan provides that the Liquidating Trustee shall establish a reserve from Hotel Cash on Hand in the amount of $275,000 in respect of the Receiver's projected outstanding fees and expenses through the Effective Date.  Section 7.5 of the Plan further provides that following the occurrence of the Effective Date, the Plan Proponent will take appropriate steps in the State Court Action to have the Receiver's appointment terminated.  To the extent the reserve established pursuant to Section 7.1 if the Plan is insufficient to pay (a) the Receiver's fees and expenses awarded in the State Court Action prior to or at the time her appointment is terminated or (b) the fees and expenses incurred by the Receiver (at the rate previously approved in the State Court Action) and her professionals after the Receiver's appointment is terminated shall be treated as an Administrative Claim under the Plan, to be paid as noted in paragraph 45, above.

46.    With respect to Priority Tax Claims, Section 3.3 of the Plan provides that Allowed Priority Tax Claims shall be paid, at the election of the Plan Proponent, in full, in Cash from Hotel Cash on Hand, either (x) on the Effective Date, or (y) in equal annual installments payable over the period that is five (5) years from the Petition Date, except to the extent the holder of an Allowed Priority Tax Claim agrees otherwise. Upon the consummation of a sale of the Hotel Property by the Liquidating Trustee in accordance with the terms of the Plan, any remaining unpaid installments in respect of an Allowed Priority Tax Claim shall be deemed accelerated and shall be paid from net distributable Hotel Property Sale Proceeds. Until paid, such Priority Tax Claims shall accrue statutory interest from the Effective Date,

- 11 -

fixed at the applicable federal or state statutory rate as in effect with respect to such claim on the Effective Date. The Plan therefore satisfies Section 1129(a)(9)(B) of the Bankruptcy Code.

47.     With respect to Priority Non-Tax Claims, Section 6.3 of the Plan provides that, Allowed Priority Claims shall be paid, at the election of the Plan Proponent, in full, in Cash from Hotel Cash on Hand, either (x) on the Effective Date, or (y) in equal annual installments payable over the period that is five (5) years from the Effective Date, except to the extent the holder of an Allowed Priority Claim agrees otherwise. Upon a consummation of a sale of the Hotel Property by the Liquidating Trustee in accordance with the terms of this Plan, any remaining unpaid installments in respect of an Allowed Priority Claim shall be deemed accelerated and shall be paid from net distributable Hotel Property Sale Proceeds. Until paid, and provided that there are available funds to make such payment, such Priority Claims shall accrue simple interest on the remaining unpaid balance thereof from the Effective Date until the date such claim is paid in full at the rate of 4.5%. The Plan therefore satisfies Section 1129(a)(9)(C) of the Bankruptcy Code.

48.     Through the Confirmation Declaration and the other testimony and documentary evidence adduced at the Confirmation Hearing, the Plan Proponent has presented competent, unrebutted evidence that the Plan Proponent has the ability to make all payments required under the Plan. As such, the Court finds that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. The Plan Proponent has therefore satisfied the requirements of Section 1129(a)(11) of the Bankruptcy Code.

**T.      U.S. Trustee Fees**

49.     The Plan provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees payable under Section 1930, Title 28, United States Code. The Plan therefore satisfies Section 1129(a)(12) of the Bankruptcy Code.

**U.      Benefit Plans**

50.     The Plan does not attempt to alter retiree benefits, if any. As a result, Section 1129(a)(13) of the Bankruptcy Code has been satisfied by the Plan.

**V.**      <u>Purpose Not to Avoid Taxes or Securities Compliance</u>

51.      The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and no governmental entity has objected to the confirmation of the Plan on any such grounds.

**W.**      <u>Feasibility</u>

52.      The information contained in the Plan and the Disclosure Statement, together with the testimony proffered and other evidence adduced at the Confirmation Hearing, establish that the Plan is feasible and that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor. The Plan therefore satisfies Section 1129(a)(11) of the Bankruptcy Code.

**X.**      <u>Injunctions; Third Party Releases</u>

53.      Pursuant to Bankruptcy Rule 3016(c), both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan.

54.      The Plan Proponent has acted in good faith and provided valuable consideration to the Debtor, the estate and creditors, in the form of additional post-Confirmation financing, releases, cash and other considerations in order to effectuate and consummate the Plan and related transactions, in exchange for which the Plan Proponent is entitled to the exculpation, releases and other consideration provided for under the Plan and this Confirmation Order.

55.      The Plan and this Chapter 11 Case present unusual circumstances that justify the granting of certain limited exculpation in favor of the Plan Proponent, its respective officers, directors, employees, agents, representatives, successors and assigns who served in such capacity on the Confirmation Date (collectively, the "<u>Released Parties</u>").

**Y.**      **Modifications of the Plan; Satisfaction of the Requirements of**
           **Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019**

56.      At the Confirmation Hearing, the Plan Proponent agreed to make the following

modifications to the Plan (each a "Plan Modification", and collectively the "Plan Modifications"):

### a) Payment of Allowed Administrative, Priority Tax, and Non-Tax Priority Claims

57.    In the event that the aggregate of Hotel Cash on Hand and Hotel Property Sale Proceeds is not sufficient to pay Allowed Administrative Claims (including the Administrative Claims of the Receiver discussed in paragraph 46, above), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims in full in accordance with the Plan, the Plan Proponent shall contribute to the Trust such supplemental Cash as may be required to pay all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims in full in accordance with the Plan (such amount as may be contributed by the Plan Proponent being defined as the "Plan Proponent Priority Claim Contribution").

### b) Class 3 Minimum Plan Recovery

58.    Section 6.4 of the Plan shall be deleted in its entirety and in its place the following clause shall be substituted and inserted:

> "Each holder of an Allowed Class 3 Claim shall receive in full, complete and final satisfaction of each such Allowed Class 3 Claim, until paid in full (inclusive of simple interest on the remaining unpaid balance thereof from the Effective Date until the date each such Claim is paid the full Allowed Amount thereof at the rate of 4.5%, provided that there are available funds to make such interest payment): (a) its Pro Rata Share of net distributable Hotel Cash on Hand and Hotel Property Sale Proceeds after the payment in full of the Allowed Class 1 Secured Claim, any residual Allowed Priority Tax Claims, and any residual Allowed Non-Tax Priority Claims, plus (b) its Pro Rata Share of net distributable proceeds realized by the Liquidating Trustee from the prosecution and/or settlement of any Causes of Action and/or Avoidance Actions ("Litigation Proceeds").
>
> In the event the aggregate of (i) Hotel Cash on Hand, and (ii) Net Hotel Property Sale Proceeds (defined below), are not sufficient to make an aggregate distribution to Class 3 Claims of at least $712,500 (after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and the Class 1 Secured Claim in accordance with the Plan), the Plan Proponent shall contribute to the Trust such supplemental Cash (the "Plan Proponent Class 3 Contribution", and together with the Plan Proponent Priority Claim Contribution the "Plan Proponent Contribution") as may be required to insure that the aggregate sum of $712,500.00 (inclusive of any amount that may be awarded to Express as an Administrative Claim) is available to distribute to the Holders of Allowed Class 3 Claims. Promptly after

the closing of the sale of the Hotel Property, the Plan Proponent shall (x) determine appropriate reserves for post-confirmation administration of the Plan (including any unpaid Administrative, Priority Tax and/or Priority Claims, U.S. Trustee Fees, and Liquidating Trustee Fees) (hereinafter, "Plan Reserves"), and (y) make an interim Distribution to the holders of Class 3 Claims based on the Plan Proponent's good faith estimate of the available distributable proceeds net of Plan Reserves, provided, however, not less than $712,500 shall be distributed to the Holders of Allowed Class 3 Claims within 90 days of the closing of the sale of the Hotel Property. In the event any holder of a Class 3 Claim disputes the amount of the Plan Proponent's interim Distribution, such holder may submit such dispute to the Bankruptcy Court for resolution. Moreover, if Litigation Proceeds are generated after the Plan Proponent Contribution is funded by the Plan Proponent then the net Litigation Proceeds shall be paid first to the Plan Proponent until such time as either the Plan Proponent Contribution has been reimbursed in full or the Class 1 Secured Claim has been paid in full and only then will the remainder of the net Litigation Proceeds be made available for distribution to the Holders of Allowed Class 3 Claims.

In the event the Holder of the Class 1 Secured Claim has a deficiency Claim that is to be treated as part of Class 3 General Unsecured Claims, the Holder of such deficiency claim shall not be entitled to receive a Distribution from any portion of the Plan Proponent Class 3 Contribution or the 20% of Hotel Property Sale Proceeds described in paragraph 60(ii)(b) of the Confirmation Order, but such deficiency claim shall otherwise be treated on a *pari passu* basis with all other Holders of Class 3 Claims."

### c)    Allocation of Hotel Sale Proceeds

59.    Anything in the Plan to the contrary notwithstanding, upon the closing of a sale of the

Hotel Property by the Liquidating Trustee, Hotel Property Sale Proceeds shall be allocated as follows:

   i.    Any "net" Hotel Property Sale Proceeds (i.e., after deduction and payment of any fees, costs and expenses due to the Hotel Broker under the Hotel Broker Engagement Agreement ("Net Hotel Property Sale Proceeds")) between $0.00-$25,000,000 shall be distributed in accordance with the Plan;

   ii.    Provided that the Class 1 Secured Claim has not theretofore been paid in full in accordance with the Plan, all Net Hotel Property Sale Proceeds greater than $25,000,000 shall be distributed in accordance with the following allocation schedule:

      a)    Eighty percent (80%) shall be paid to 62 Madison, until such time as the Class 1 Secured Claim has been paid in full; and

      b)    Twenty percent (20%) shall be paid to the Trust for distribution to the Holders of Allowed Class 3 Claims until such Claims have

- 15 -

been paid the full Allowed amount thereof, including interest, as provided in Section 6.3 of the Plan.

iii.        Upon the payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, the Class 1 Secured Claim, and all Allowed Class 3 Claims, any remaining Net Hotel Property Sale Proceeds shall be distributed in accordance with the terms of the Plan.

**d)**      **Potential Administrative Claim of Express**

60.     In exchange for the Plan Proponent's agreement to provide the Plan Proponent Contribution and to provide for the allocation of Hotel Property Sale Proceeds described in paragraph 60(ii)(b), above, Express agrees that any Administrative Claim it may request or receive under Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code shall be subordinate to all other Allowed Administrative Claims, all Allowed Priority Tax Claims, all Allowed Priority Non-Tax Claims, and the Class 1 Secured Claim.  In addition, any such Administrative Claim awarded to Express shall be excluded from the calculation of the amount of the Plan Proponent Contribution and the Plan Proponent shall have no obligation to provide for the payment of that claim.

**e)**      **Allowance of 62 Madison Amended Secured Claim**

61.     The 62 Madison Secured Claim shall be allowed in the agreed reduced aggregate amount of $24,371,284.44, representing (i) outstanding principal and accrued interest under the Senior Mortgage Documents through March 8, 2013 and (ii) reasonable professional fees and expenses incurred through January 31, 2013 (the "Allowed Amended 62 Madison Secured Claim"). The Allowed Amended 62 Madison Secured Claim shall constitute an Allowed Claim for all purposes in the Chapter 11 Case and the Plan; provided, that, in accordance with Section 506(a) of the Bankruptcy Code, the allowed secured portion of said claim shall be determined based on the aggregate sale price of the Hotel Property following Bankruptcy Court approval of the sale thereof in accordance with the Hotel Property Sale Procedures. The Allowed Amended 62 Madison Secured Claim shall be further amended to include such additional interest and reasonable professional fees as may accrue and be incurred through the date of the payment of the Class 1 Secured Claim in full under the Plan; provided, however, the rights of parties in

interest to object to the inclusion in the Allowed Amended 62 Madison Secured Claim of any such additional interest for the period from and after March 9, 2013 and/or professional fees incurred on or after February 1, 2013 (such periods being defined herein as the "Supplemental Period") is hereby preserved. Upon a closing of a sale of the Hotel Property, a reserve shall be created by the Liquidating Trustee from Net Hotel Property Sale Proceeds sufficient to pay any additional interest and reasonable professional fees as may accrue and be incurred during the Supplemental Period through and including the date of the payment of the Class 1 Secured Claim in full under the Plan. Not later than thirty (30) days after the conclusion of the Hotel Property auction, 62 Madison shall provide counsel for Express, counsel for the Debtor, and the U.S. Trustee with copies of redacted invoices and other supporting materials showing the calculation of any additional interest and/or reasonable professional fees that have accrued during the Supplemental Period through the Hotel Property sale closing. Any party in interest that objects to the inclusion in the Allowed Amended 62 Madison Secured Claim of any such Supplemental Period additional interest and/or fees must file a written objection, setting forth the grounds therefor, and serve same on counsel for 62 Madison, on or prior to the date that is fifteen (15) days after delivery of the aforementioned copies of redacted invoices and other supporting materials showing the calculation of any Supplemental Period additional interest and/or reasonable professional fees that have accrued through the Hotel Property sale closing. In the event any such written objection is timely filed and served, the Court shall conduct a hearing thereon at a date and time to be fixed by the Court. Nothing in this Order shall prejudice (a) any party in interest from objecting to the inclusion in the Allowed Amended 62 Madison Secured Claim of any such Supplemental Period additional professional fees on the basis that 62 Madison provided redacted copies only of the underlying invoices covering the Supplemental Period, or (b) 62 Madison's rights to oppose any request that it furnish unredacted copies of its legal fee invoices.

(f)    **Definition Modification**

62.    Section 2.27 of the Plan shall be modified by deleting the text thereof in its entirety and substituting the following in its place:

"2.27    *"Effective Date"* shall be the date on which all conditions to

effectiveness of the Plan set forth in Section 11.3 hereof have been satisfied or waived in accordance with the terms of the Plan."

63.    Section 1127 of the Bankruptcy Code provides that the proponent of the plan may modify the plan at any time before confirmation if the plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. Bankruptcy Rule 3019 provides that, after a plan has been accepted and before its confirmation, the plan proponent may modify such plan.

64.    Moreover, Section 1127(c) of the Bankruptcy Code requires the proponent of a modification to comply with Section 1125 of the Bankruptcy Code. Further disclosure and re-solicitation of votes on a modified plan is only required, however, when the modification materially *and* adversely affects parties who previously voted for the plan. *See, e.g., In re Federal-Mogul Global Inc.,* 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *see also Beal Bank, S.S.B. v. Jack's Marine, Inc., (In re Beal Bank, S.S.B.),* 201 B.R. 376, 380 n.4 (E.D. Pa. 1996); *In re Century Glove, Inc.,* 1993 U.S. Dist. LEXIS 2286, at *12 (D. Del. Feb. 10, 1993); *In re Am. Solar King Corp.,* 90 B.R. 808, 823-24 (Bankr. W.D. Tex. 1988); *see also In re Temple Zion,* 125 B.R. 910, 914 (Bantu. E.D. Pa. 1991).

65.    The Plan Modifications do not adversely affect any Creditor or Equity Interest holder. As a result, no re-solicitation is required pursuant to Section 1125 of the Bankruptcy Code. Accordingly, the Plan, as modified by the Plan Modifications, complies with Section 1127(c) of the Bankruptcy Code.

66.    As the Plan complies with Sections 1122 and 1123 of the Bankruptcy Code, the Plan complies with Section 1127(a) of the Bankruptcy Code.

## Z.    **Other**

67.    The omission of any reference or specific discussion of all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect and enforceability of every other provision of the Plan. To the extent of any inconsistencies between the terms of this Confirmation Order and the Plan, the terms of this Confirmation Order shall control, except as otherwise provided

herein.

## AA.    __Modification of Confirmation Order__

68.    If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent Order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponent's receipt of written notice of any such order; nor shall such reversal, modification or vacation hereof affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification or vacation hereof, any such obligations incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacation shall be governed in all respects by the provisions hereof and of the Plan, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

## BB.    __Burden of Proof__

69.    The Plan Proponent has met its burden of proving all of the elements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), and Section 1129(b) of the Bankruptcy Code has been satisfied.

## CC.    __Exemption From Transfer Taxes__

70.    Section 1146(a) of the Bankruptcy Code provides that the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code may not be taxed under any law imposing a stamp or similar tax. *See e.g., Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 41(2008).

71.    Section 1146(a) of the Bankruptcy Code applies to the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without express or implied limitation, any sale, transfer, conveyance and/or assignment of the Hotel Property made

pursuant to the Plan.

72.    Any purchaser of the Hotel Property, to the extent such purchaser is unaffiliated with the Debtor, shall not be deemed to (i) be the successor of the Debtor by reason of any theory at law or in equity, (ii) except as specifically set forth herein, in the Plan, or in any purchase agreement and any other agreements entered into in connection therewith, assume, incur or be responsible for any Claims or Liabilities of the Debtor or any of its affiliates, (iii) have, de facto or otherwise, merged with or into the Debtor, or (iv) be a mere or substantial continuation of the Debtor or the enterprise of the Debtor. No purchaser shall assume or have any liability or obligation for any Claim against the Debtor except for those liabilities specifically assumed by such purchaser pursuant to the terms of a purchase agreement entered into with the Trust.

For the foregoing reasons, the Court determines that the Plan, including the Plan Modifications, should be confirmed. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1.    The Plan is in all respects confirmed, pursuant to Section 1129 of the Bankruptcy Code, and all of its terms and provisions are approved.

2.    In accordance with Section 1127 of the Bankruptcy Code, the Plan Modifications are hereby approved in all respects, and the Plan shall be, and the same hereby is modified and amended thereby.

3.    Each term and provision of the Plan, as the same has been modified by the Plan Modifications, and further as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

4.    The Trust is approved in all respects.  The Plan Proponent and the Liquidating Trustee under the Liquidation Trust is authorized and directed to take any and all actions contemplated to be taken by them under the Plan and the trust agreement relative to the Trust.

5.      To the extent that such contracts are not terminated prior to the Effective Date of the Plan, the executory contracts and unexpired leases set forth on Exhibit "A" to the Plan Supplement are deemed assumed as provided for in the Plan.

6.      Upon the satisfaction and/or waiver of the conditions set forth in Sections 11.3 and 11.4 of the Plan, the Plan shall become effective.

7.      The Plan Proponent shall comply with all obligations, terms and conditions of the Plan.

8.      In accordance with Section 1141(b) and (c) of the Bankruptcy Code and the Plan, title to the Debtor's assets shall vest on the Effective Date as provide in the Plan, free and clear of all liens, claims, and interests of creditors, equity security holders, members and of general partners in the Debtor. Until the Effective Date, the Debtor shall continue to perform its duties under the Bankruptcy Code.

9.      In accordance with Section 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Plan Proponent, the Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed, a proof of Claim or proof of Equity Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of property to or from the Debtor. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtor or its property or interests in property.

10.      All of the existing capital stock and other ownership interests (including any derivative or contractual rights relating thereto) of the Debtor is hereby cancelled; _provided_ _that_ the interests of any party with a collateral interest in such Equity Interests shall attach to any proceeds associated with or that the holder of such Equity Interests may be entitled to receive under the Plan. Promptly following the occurrence of the Effective the Plan and the effectuation of the property transfers contemplated by the

Plan, the Plan Proponent and/or the Liquidating Trustee shall take all reasonable, necessary and appropriate steps to affect the dissolution of the Debtor as a legal entity.

11.     The Plan Proponent and any designee, its respective Representatives, equity holders, directors, officers, employees, attorneys, financial advisors, investment bankers and other professionals have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and consummation of the Plan, and accordingly, has satisfied Section1125(e) of the Bankruptcy Code.

12.     The Plan Proponent, and where applicable the Liquidating Trustee on behalf of the Debtor and/or the Trust, as the case may be, is hereby authorized and directed to execute any necessary documents to meet the statutory requirements, if any, for filing necessary papers with the State of New York or any other jurisdiction to effectuate the terms of the Plan.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall he binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

13.     Pursuant to Section 12.5 of the Plan, except as otherwise expressly provided in the Plan, or any other Order of this Court, all persons or entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any Released Party and/or the Debtor's assets and/or properties with respect to such Claim or Equity Interest (other than actions brought to enforce any rights or obligations under the Plan):

> a)  commencing or continuing in any manner any action or other proceeding of any kind,

     b)  enforcing, attaching, collecting or recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order,

     c)  creating, perfecting, or enforcing, in any manner, directly or indirectly, any encumbrance of any kind,

     d)  asserting any right of setoff, subrogation or recoupment of any kind, or

     e)  pursuing any Claim released pursuant to Section 9.03 of the Plan.

14.     Except as otherwise provided in the Plan, such injunction shall extend to any successors of the Plan Proponent, the Debtor, and their respective properties and interests in properties. Additionally, upon the entry of this Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates are hereby enjoined (from taking any actions other than by or in connection with an appeal of this Confirmation Order) to interfere with the implementation or consummation of the Plan. Pursuant to Section 12.5 of the Plan, unless otherwise provided in the Plan, this Confirmation Order, or a separate order of the Court, all injunctions or stays arising under or entered during the Chapter 11 cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of this Confirmation Order shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay; provided, however, that on the Effective Date, the stay shall be replaced to the extent provided in this Confirmation Order, with an injunction set forth in Section 12.5 of the Plan and/or Sections 524 and 1141 of the Bankruptcy Code.

15.     Payment of all Allowed Claims of professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order, unless other provisions have been made between the professional and the Plan Proponent.

16.     Upon the Effective Date, all executory contracts and unexpired leases of the Debtor that have not been terminated by the Effective Date (a) previously assumed by Order of this Court, (b) subject

to a pending motion to assume, and/or (c) that are identified in Exhibit "A" to the Plan Supplement and incorporated herein, shall be deemed assumed in accordance with the terms of the Plan without further action by the Debtor and notwithstanding any provision in such contract or lease prohibiting assignment or transfer.

17.    The cure amounts set forth in the Plan Supplement are hereby approved. All Cure Amounts shall be paid to the respective contract and lease counterparties of the assumed contracts and unexpired leases as provided for under the Plan.

18.    The payment of an applicable cure amount shall constitute the cure of all defaults arising under the applicable executory contract or unexpired lease in accordance with Section 365(b) of the Bankruptcy Code. Upon payment of the applicable cure amount, the applicable contract or lease counterparty is barred and permanently enjoined from asserting against the Debtor or the Plan Proponent any default, claim, or liability existing, accrued or arising, or relating to the applicable contract or lease for the period prior to the entry of this Confirmation Order, *except* any obligations arising under such contract or lease from and after the Petition Date but not yet due and payable under the terms of the applicable contract or lease.

19.    Upon the Effective Date, all executory contracts and unexpired leases of the Debtor (a) not previously assumed by Order of this Court, (b) not subject to a pending motion to assume, or (c) not identified in Exhibit "A" to the Plan Supplement and incorporated herein, shall be deemed rejected, unless such contracts or leases were or are otherwise assumed pursuant to the Plan and this Confirmation Order. Parties to such rejected leases and contracts are required to file a proof of claim with the Bankruptcy Court for rejection damages, if any, pursuant to the provisions of Section 502(g) of the Bankruptcy Code, within thirty (30) days from the entry of this Confirmation Order or such Claim shall be forever barred.

20.    Subject to any applicable limitations contained in the Plan, the Plan Proponent and the Liquidating Trustee shall each have one hundred and twenty days (120) from the Effective Date to commence any claims objections ("Objection Deadline"). The Plan Proponent and the Liquidating

Trustee, upon motion and a hearing, may request the entry of an order of this Court extending the Objection Deadline.

21.     In accordance with Sections 524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order, including, without limitation, Section 12.5 of the Plan, on and after the Effective Date, all Persons are permanently enjoined and restrained from, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Equity Interest, seeking to hold liable the Released Parties and/or the Debtor's assets or properties for any claim, obligation, right, interests, debt or liability that has been treated pursuant to the Plan and for any and all claims arising under bankruptcy or non-bankruptcy law relating in any way to the Debtor or its businesses.

22.     Pursuant to Section 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale of the Hotel Property in accordance with the terms of the Plan, shall not be subject to any stamp, real estate transfer, documentary, registration, sales, added-value, mortgage release, mortgage recording, or similar tax.

23.     All entities holding Claims against or Equity Interests in the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

24.     In accordance with Section 1142 of the Bankruptcy Code, the Plan Proponent and any other entity designated pursuant to the Plan, including, without limitation, the Liquidating Trustee, are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan

in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

25.    The Plan Proponent is hereby authorized, upon subsequent Order of the Court, to amend or modify the Plan at any time prior to substantial consummation, but only in accordance with Section 1127 of the Bankruptcy Code and the Plan.

26.    Except as otherwise provided in the Plan, the Plan Proponent and/or the Liquidating Trustee, as applicable, shall cause to be paid to the U.S. Trustee the fees, if any, imposed pursuant to 28 U.S.C. Section 1930(a)(6) for post-Confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6).

27.    Until this Chapter 11 Case is closed through the entry of a Final Decree, the Court shall retain jurisdiction pursuant to Bankruptcy Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out. The Court shall also retain jurisdiction to:

a)    To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests;

b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

c)    To determine any application pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be, to liquidate, any and all claims arising therefrom;

d)    To hear and determine any matter arising from or relating to the sale, transfer, conveyance and assignment of the Hotel Property as provided for in the Plan;

e)    To determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date;

f)    To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency on any Order of the Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code;

g)      To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or obligations arising thereunder;

h)      To consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor's estate;

i)      To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; and

j)      To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order, the Effective Date or the Distribution Date.

28.      Hereafter, the only parties to whom notices of matters and proceedings shall be given, and on whom service of pleadings is required shall be limited to the Plan Proponent and its counsel, by notifying or serving them and their respective counsel of record at the following addresses:

> c/o Madison Capital
> 55 East 59th Street, 17th Floor
> New York, New York 10022
> Attn: David J. Steinberg
>
> With a copy to (which shall not constitute notice):
>
> Riemer & Braunstein LLP
> Times Square Tower
> Seven Times Square, Suite 2506
> New York, New York 10036
> Attn: Jeffrey D. Ganz, Esq.
>         Steven E. Fox, Esq.

29.      This Confirmation Order shall be deemed to constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority, whether foreign or domestic, or judicial or administrative body, whether foreign or domestic, with respect to the implementation or consummation of the Plan.

30.      Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the

Plan Proponent prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan including all documents, instruments and agreements related thereto.

31.    The failure to specifically include any particular provision of the Plan in this Confirmation Order or any further order of the Court contemplated by this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan, this Confirmation Order, and any further order of the Court contemplated by this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is any inconsistency between the provisions of the Plan and the documents entered into by the Plan Proponent pursuant thereto and this Confirmation Order, or any further order of the Court contemplated by this Confirmation Order, the terms and conditions contained in this Confirmation Order or such further order of the Court shall govern and shall be deemed a modification to the Plan and shall control and take precedence.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

32.    The Court's retention of jurisdiction under Section 11.6 of the Plan shall be expanded in all respects to vest the Liquidating Trustee of the Trust with the same rights, powers and standing as the Debtor and as otherwise provided in the Plan and Liquidation Trust Agreement.

33.    In accordance with Article VII of the Plan, including, without limitation, Sections 7.1 and 7.3 thereof, Odyssey Capital Partners, LLC ("Odyssey") is hereby approved as the Liquidating Trustee to perform those duties and responsibilities as are set forth in the Plan and Liquidating Trust Agreement, with such retention and engagement being in accordance with the terms and provisions of Odyssey's engagement agreement in the form annexed as Exhibit "B" to the Plan Supplement.

34.     In accordance with Article VII of the Plan, including, without limitation, Sections 7.1 and 7.3 thereof, the form of Liquidation Trust Agreement, in substantially the form of agreement annexed to the Plan as Exhibit "C" thereof, shall be and the same hereby is approved, and the Plan Proponent is hereby authorized to enter into said agreement with the Liquidating Trustee.

35.     In accordance with Article VII of the Plan, including, without limitation, Sections 7.1 and 7.3 thereof, Savills, LLC is hereby approved as the Hotel Broker to perform those duties and responsibilities as are set forth in the Plan and the Hotel Broker Engagement Agreement, in the form annexed as Exhibit "A" to the Plan.

36.     In accordance with Article VII of the Plan, including, without limitation, Sections 7.1 and 7.3 thereof, the Liquidating Trustee, on behalf of the Trust, is hereby authorized and directed to (a) enter into the Hotel Broker Engagement Agreement (b) enter into the stalking horse bid agreement with the Plan Proponent.

37.     In accordance with Article VII of the Plan, including, without limitation, Section 7.1 thereof, the Hotel Property Sale Procedures, in the form annexed as Exhibit "B" to the Plan, are hereby approved.

38.     In accordance with Section 1146(a) of the Bankruptcy Code, each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

39.     The Debtor and the Receiver, as applicable, shall provide the Liquidating Trustee with (a) access to and assistance in locating any books and records of the Debtor that may reasonably be requested by the Liquidating Trustee and (b) access to and assistance from employees of the Debtor who may reasonably be expected to have knowledge regarding the Debtor's books and records or factual information relevant to any Causes of Action or objections to Claims that may be brought by the Trust.

Nothing in this section shall be construed to limit any obligation of any parties, including but not limited to the Debtor, to pay any expenses or bear any out-of-pocket costs in connection with responding to any discovery requested pursuant to the Federal Rules of Civil Procedure, or any similar rules, in any action brought in a court of competent jurisdiction.

40.      Notwithstanding Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or otherwise, the Confirmation Order shall take effect on at 12:01 a.m. (ET) on the date that this Order is entered on the official docket of this Court.

[Remainder of Page Intentionally Left Blank]

41.    Within five (5) days after the entry of this Confirmation Order, the Plan Proponent shall mail to all known Creditors and Holders of Interests and all other parties-in-interest (including professionals) a notice informing such parties of the entry of this Confirmation Order, which notice shall be substantially in the form annexed hereto as Exhibit "3" and incorporated herein.

Dated:  May 8, 2013
        New York, New York

        _____/s/Martin Glenn_____
            MARTIN GLENN
        United States Bankruptcy Judge